**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **v.** | * | **Case No. 21-cr-0386-2-(TNM)** |
| | * | |
| **PAULINE BAUER**, | * | |
| **Defendant.** | * | |
| | * | |

**ooOoo**

**MOTION TO DISMISS COUNT ONE FOR FAILURE TO STATE AN
OFFENSE AND FOR VAGUENESS**

Pauline Bauer, by her undersigned counsel, hereby respectfully moves pursuant to Fed.R.Crim.Proc. 12(b) to dismiss Counts I of the Indictment (ECF 11), which charges that Ms. Bauer "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18" in violation of 18  U.S.C. § 1512(c)(2).

As charged, Count I fails to state an offense.  Section 1512(c)(2), which was enacted in 2002 as part of the Sarbanes-Oxley Act to address corporate fraud, makes it illegal for a person to otherwise corruptly obstruct, influence, or impede an official proceeding.  The statutory language, legislative history and legal precedents reflect that § 1512(c)(2) criminalizes tampering with the availability or integrity of witnesses and evidence to be presented at an official proceeding.  But the Indictment does not allege that Ms. Bauer did any such thing.  Instead, the Indictment and the Complaint filed in the case appear to allege that Ms. Bauer's presence within the Capitol on January 6, 2021, as part of a political demonstration, after the Congressional proceedings had been suspended violated § 1512(c)(2).  No case brought under § 1512(c)(2) since its enactment supports such a broad

reading.  *See Yates v United States,* 574 U.S. 528 (2015) (holding that 18  U.S.C. § 1519, another Sarbanes-Oxley obstruction provision, applies only to the destruction of objects used to record or preserve information).  Under the *Yates* rationale, § 1512(c)(2) does not criminalize participation in a demonstration, no matter how peaceful or disorderly.  *Compare* 18 U.S.C. § 1507 (prohibiting demonstrations in or near a federal *court* building or the residence of a *judge, juror or court official*). Nor has an "official proceeding" as that term has been construed in every reported § 1512(c)(2) case on the subject reach a proceeding that did not involve a judicial or grand jury proceeding or one involving an exercise of Congress's implied power of investigation in aid of legislation.

As an independent basis, Count One must be dismissed as the terms "corruptly" and "otherwise" in § 1512(c)(2) are void for vagueness, facially and as applied, in violation of the Due Process clause and therefore cannot support the charge in Count I under this Circuit's decision in *United States v. Poindexter,* 951 F.2d 369 (D.C. Cir.1991), *cert. denied,* 506 U.S. 1021 (1992) and other legal precedents.

## INTRODUCTION

When activity that falls within the shadow of the First Amendment is alleged to be criminal, courts are required to apply the strictest standards of judgment in ensuring that only intentional criminal activity is prosecuted and not constitutionally protected actions, beliefs or associations. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19 (1982) (boycott activity, which was not itself violent, that resulted in the loss of business profits was constitutionally protected); *Noto v. United States*, 367 U.S. 290, 299-300 (1961) (requiring "rigorous standards of proof" in Smith Act

prosecutions).[1]  There can be no dispute that circumstances surrounding Count One and the misdemeanor offenses charged in Counts Two through Five in this case involve the role and activities of thousands of Americans, including Ms. Bauer in the political activities.  On January 6, 2021, then-President Donald Trump had summoned his supporters to Washington, D.C. for a political rally to be held at the Ellipse near the White House.  Once at the podium, President Trump told the persons assembled at the rally to walk to the Capitol and make their voices heard by Congress.[2]

When individuals associate together to advance a shared political objective, this activity is presumptively protected by the First Amendment to the United States Constitution.  *See Texas v. Johnson,* 491 U.S. 397, 408-09 (1989) (a principal "function of free speech under our system of government is to invite dispute.  It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger").  In reversing a conviction for flag-burning as "expressive conduct" within protection of the First Amendment, the Supreme Court considered that the incident took place during a demonstration "to

---

[1]  *Noto* involved a prosecution under the Alien Registration Act (popularly known as the "Smith Act"), that made it illegal to advocate the violent overthrow of the government, and required non-citizens to register with the federal government.  In *Noto,* the Supreme Court emphasized that a Smith Act prosecution must be judged *strictissimi juris* to avoid the "danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes."  *Noto*, 367 U.S. at 299-300.

[2]  Among other things, President Trump told the assembled crowd:  "We have come to demand that Congress do the right thing and only count the electors who have been lawfully slated. . . . I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard."  Washington Post, 2/10/21, "When did the Jan. 6 rally become a march to the Capitol?" https://www.washingtonpost.com/politics/2021/02/10/when-did-jan-6-rally-become-march-capitol/

protest the policies of the Reagan administration" while President Reagan was being renominated at the Republican National Convention held in Dallas in 1984. *Id.* at 399. Notably for purposes of the instant case, the Supreme Court rejected the argument propounded by Texas that the breaches of the peace by other demonstrators nullified the flag burner's First Amendment rights. *Id.* at 408.

As set out in the Indictment and in the terabyte quantities of discovery produced by the United States, Ms. Bauer came to Washington, D.C. to attend a political rally near the White House. Ms. Bauer, a 54-year old with no prior convictions, is a business owner and a productive member of society.[3] During her time in Washington, D.C., Ms. Bauer did not destroy any property and did not injure anyone. She did not bring any weapons with her to the District of Columbia. She did not steal or take away any documents or other property belonging to members of Congress. She did not delete any social media posts, other communications or otherwise destroy any evidence. There is no allegation that while in the Capitol she acted corruptly, *i.e.*, she did not accept or pay any bribes; she did not lie to authorities; and she did not encourage anyone to lie to authorities. She is alleged to have entered the United States Capitol at approximately 2:43 p.m. and exited at approximately 3:21 p.m.[4] Under Supreme Court precedent, Ms. Bauer's activities while in D.C. are protected by First Amendment freedoms – of speech, of association, and of assembly to petition the Government for redress of grievances.

---

[3] *See* Second Motion for Reconsideration of Detention Order (ECF 73) at 6.

[4] Complaint (ECF 2-1) at 9, 12.

## THE STATUTE

**18  U.S.C. § 1512.  Tampering with a witness, victim, or an informant**

(c) Whoever corruptly–

> **(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> **(2)** otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

## ARGUMENT

I.   **Congress Did Not Bury a Broad Obstruction Prohibition That Reaches First Amendment Protected Demonstrations in § 1512(c)(2) by Using a Vague Term Such as "Otherwise."**

Section 1512(c)(2) was enacted as part of the Sarbanes–Oxley Act of 2002, P.L. 107-204. The Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents."  *Yates v. United States,* 574 U.S. 528, 535–36 (2015). Nothing in the statutory language or the legislative history supports the notion that Congress enacted § 1512(c)(2) to criminalize the disruption of a Congressional proceeding by persons engaged in a political rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become.

Congress certainly knows how to criminalize in explicit terms demonstrations or violent conduct that interfere with proceedings. For example,18 U.S.C. § 1507 makes it illegal to picket or

parade near a federal courthouse with the intent to interfere with a proceeding.[5]  Similarly, Congress

knows how to criminalize threats or violence intended to interfere with a proceeding or with certain

types of congressional hearings as it has in 18 U.S.C. § 1505.[6]  Neither of those statutes reach the

conduct charged in this case.

It is clear that if Congress had wanted to criminalize the conduct charged in the Indictment,

it could have done so by expanding § 1507 to include picketing at the Capitol.  Or by extending

§1505 to all sorts of Congressional proceedings and not just those engaged in investigations.

However, there are valid reasons why Congress limited § 1505 and 1507 as it did.  Unlike judicial

---

[5]  In pertinent part, § 1507 provides:

**18 U.S.C. § 1507.  Picketing or parading.**

Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the United States, or in or near a building or residence occupied or used by such judge, juror, witness, or court officer, or with such intent uses any sound-truck or similar device or resorts to any other demonstration in or near any such building or residence, shall be fined under this title or imprisoned not more than one year, or both.

[6]  In pertinent part, § 1505 provides:

Whoever corruptly, or **by threats or force**, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or **the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress**—

6

proceedings referenced in § 1507 and Congressional committees engaged in investigative activities, extending those provisions to the political work of Congress would surely run afoul of the First Amendment. The D.C. Circuit has explained the practical implications of the political nature of Congressional activities to obstruction statutes:

> to assert that all endeavors to influence, obstruct or impede the proceedings of congressional committees are, as a matter of law, corrupt – would undoubtedly criminalize some innocent behavior. Unlike courts of law covered by section 1503, congressional committees are part and parcel of a political branch of government and therefore serve wide-ranging political functions not limited to a search for truth in accordance with formal rules. They may also have a far-flung investigative scope and evoke legitimate political jousting between the executive and legislative branches. No one can seriously question that people constantly attempt, in innumerable ways, to obstruct or impede congressional committees. An executive branch official, for example, might call the chairman of a congressional committee convened to investigate some wrongdoing and say, "We both know this investigation is really designed to embarrass the President (or a Senator), not to investigate wrongdoing. Why don't you call it off?" The official surely intends to obstruct or impede the inquiry, but it does not necessarily follow that he does so corruptly. Similarly, a political activist might contact his representative and tell her that unless she stops spending her time pursuing a certain investigation rather than some other legislative endeavor, the activist's group will oppose her reelection. Again, the activist is endeavoring to impede or obstruct the investigation, but is not necessarily doing so corruptly.

*United States v. North*, 910 F.2d 843, 882 (D.C. Cir. 1990).[7]

In the face of these clear statutory provisions enacted by Congress in § 1505 and § 1507, this Court should not broaden the reach of § 1512 as the Indictment in this case seeks to do. As the Supreme Court has explained,

---

[7] This opinion was withdrawn and superseded in part on rehearing by *United States v. North,* 920 F.2d 940 (D.C. Cir. 1990).

> [Courts] have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed."  We do not believe that uttering false statements to an investigating agent – and that seems to be all that was proved here – who might or might not testify before a grand jury is sufficient to make out a violation of the catchall provision of § 1503.

*United States v. Aguilar*, 515 U.S. 593, 600 (1995) (internal citations omitted).

Count I in the instant case charges a violation of § 1512(c)(2), a catch-all provision that reaches conduct that "otherwise" obstructs an official proceeding.  Section 1512(c)(2) is contained within Chapter 73 of the United States Code which defines Obstruction of Justice offenses, *see, e.g.,* 18 U.S.C. § § 1501-1521.  Section 1512 is titled "Tampering with a witness, victim or an informant."  Other than the cases recently brought in this district arising out of the events on January 6, 2021 at the Capitol, the United States has never brought a prosecution under § 1512(c)(2) since its passage in 2002 involving a claim that demonstrations or rowdy crowds, who disrupt or cause the suspension of an official proceeding, committed an obstruction offense under § 1512(c)(2).  Nor has the United States ever prosecuted other demonstrators, who have caused the suspension or disruption of congressional hearings under § 1512(c)(2).[8]

---

[8] Demonstrators often disrupt congressional proceedings but there is no evidence that they have been charged with 20-year obstruction offenses under § 1512(c)(2).  *See, e.g,,* "Protesters Disrupt Senate Hearing on Health Care" at https://www.youtube.com/watch?v=prtYKvO05A8; "Capitol Police Drag Disabled Trumpcare Protesters From Wheelchairs, Make 43 Arrests" at https://patch.com/us/white-house/watch-capitol-cops-drag-disabled-trumpcare-protesters-wheelc hairs-across-floor (the arrestees were charged with misdemeanors under D.C. Code  §22-1307); "Extinction Rebellion protesters glue themselves to doors to confront politicians at US Capitol" at https://www.theguardian.com/environment/2019/jul/23/extinction-rebellion-protesters-us-capitol -washington.

The Supreme Court has rejected the broad reading of "otherwise" that the Government seeks to adopt in the instant case.  In *Yates v. United States*, the majority rejected the government's use of a Sarbanes-Oxley anti-shredding law to prosecute a fisherman who tossed undersized fish overboard in an attempt to keep authorities from learning that he had caught undersized fish.[9]  *Yates* rejected prosecutors' attempt to broadly define the term "tangible object" to include fish tossed overboard by the defendant.  The Supreme Court explained that "we resist reading §1519 expansively to create a coverall spoliation of evidence statute, advisable as such a measure might be. Leaving that important decision to Congress, we hold that 'tangible object' within 1519's compass is one used to record or preserve information."  *Yates v. United States,* 574 U.S. at 549.   Similarly, here, this Court should not expansively read "otherwise" in § 1512(c)(2) to include within the reach of the statute the actions of persons engaged in political demonstrations.  Congress could not possibly have intended to include "political demonstrations" within the scope of the phrase "otherwise."  No matter how disruptive, political demonstrations have no relationship to witnesses or information to be presented at proceedings, the proper scope of § 1512 based on its statutory language and its legislative history.

A reading of the "otherwise" catchall provision in § 1512 that includes only conduct intended to generate false testimony, impede the testimony of witnesses, or impair the collection of evidence in some fashion is consistent with the case law.  *See, e.g., United States v. Pugh*, 945 F.3d 9, 28 (2d

---

[9] In *Yates*, a fisherman caught an undersized red grouper in the Gulf of Mexico, contrary to federal law. To prevent federal authorities from finding out, he ordered a crew member to toss the catch into the sea. He was charged with an obstruction offense under § 1519, which penalizes "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, *or tangible object* with the intent to impede, obstruct, or influence the investigation . . ." 574 U.S. at 532 (quoting § 1519) (emphasis added).  The Supreme Court reversed Yates' conviction as the term "tangible object" did not encompass the grouper.

Cir. 2019) (defendant destroyed several USB drives and deleted data on his iPod); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (upholding conviction of former Chicago police official for providing false answers to interrogatories in a civil law suit filed by a person seeking damages for mistreatment while in police custody)[10]; *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (making intentional false statements to court during a preliminary injunction hearing); *United States v. Phillips,* 583 F.3d 1261 (10th Cir. 2009) (affirming conviction of defendant who disclosed undercover officer's identity to impede a grand jury investigation); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir.2009) (making false statements to a grand jury); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) (defendant "attempted to orchestrate" grand jury witness's testimony by sending notes to an attorney who in turn "coached" the witness); *United States v. Lucas*, 499 F.3d 769, 780–81 (8th Cir.2007) (§ 1512(c)(2) conviction affirmed where defendant sought to have others falsely claim ownership of a firearm); *United States v. Ring*, 628 F. Supp.2d 195, 225 (D. D.C. 2009)(false statements covered by § 1512(c)(2)).

*Yates* makes clear that Ms. Bauer's alleged entry into the United States Capitol does not amount to a § 1512(c)(2) offense of corruptly obstructing, influencing and impeding Congress' certification of the Electoral College vote" as alleged in Count One.

> Having used traditional tools of statutory interpretation to examine markers of congressional intent within the Sarbanes–Oxley Act and § 1519 itself, we are persuaded that an aggressive interpretation of "tangible object" must be rejected.  It is highly improbable that Congress would have buried a general spoliation statute covering objects of any and every kind in a provision targeting fraud in financial recordkeeping.

---

[10]   The 7th Circuit explained that §(c)(1) "covers obstructive conduct in the form of physical destruction of documents and records" whereas § 1512(c)(2) covers "otherwise" obstructive behavior to include giving false statements in interrogatories relating to a civil law suit. *Burge*, *supra.*

*Yates,* 574 U.S. AT 546.  As in Yates, it is highly improbable that Congress would have buried a broad general obstruction statute that reaches even the acts of demonstrators – a First Amendment protected activity – in § 1512(c)(2) by using a vague term such as "otherwise."  This is expecially true where § 1512(c)(2) does not even include a requirement that the person acted willfully, knowingly, or intentionally.

## II.     The Obstruction Statute Charged in Count One Is Unconstitutionally Vague

To comport with the Due Process clause, a statute must give fair warning of the prohibited conduct.  *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964).   A statute is unconstitutionally vague under the due process clause if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). In case like this one where First Amendment rights are implicated, a court may declare the law facially invalid.  *See Reno v.  American Civil Liberties Union,* 521 U.S. 844 (1997).

### A.     A Criminal Statute That Makes it Illegal for a Person to Corruptly Influence, Obstruct and Impede Congressional Inquiries Is Facially Void For Vagueness

In *United States v. Poindexter,* the D.C. Circuit held that the term "corruptly" as used in 18 U.S.C. § 1505, the obstruction statute under which Poindexter was prosecuted "is too vague to provide constitutionally adequate notice that it prohibits lying to the Congress."  *Poindexter,* 951 F.2d at 379.[11]  The statutory provision that *Poindexter* found too vague to pass constitutional muster

_____

[11]   Two years after the Poindexter decision, Congress amended the statue to provide a definition of "corruptly."  *See* 18  U.S.C. § 1515(b) ("As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."). However, by its terms, the amendment only applies to § 1505 prosecutions.

11

is materially identical to the language in § 1512(c)(2) charged in Count 1.[12]

The D.C. Circuit explained that the term "corruptly"

> must have some meaning because otherwise the statute would criminalize all attempts to "influence" congressional inquiries – an absurd result that the Congress could not have intended in enacting the statute. . . ."[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." In particular, a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which "policemen, prosecutors, and juries ... pursue their personal predilections."

> In response to certain different arguments that the defendant made unsuccessfully in North I, we quoted several modern dictionary definitions of the word "corrupt":

> "[C]orruptly" is the adverbial form of the adjective "corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness ... of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or

---

12

| | § 1505 | § 1512(c)(2) |
|---|---|---|
| state of mind | *corruptly* | *corruptly* |
| *actus reus* | *influences, obstructs, or impedes* | *obstructs, influences, or impedes* |
| object | *the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House . . . of the Congress* | *any official proceeding*<br>---<br><br>(*official proceeding* includes a *proceeding before Congress*).<br>18 U.S.C. § 1515(a)(1)(B) |
| penalty | 5 years imprisonment | 20 years imprisonment |

> someone else, inconsistent with official duty and the rights of others."
>
> . . .
>
> We must acknowledge that, on its face, the word "corruptly" is vague; that is, in the absence of some narrowing gloss, people must "guess at its meaning and differ as to its application."
>
> . . .
>
> The various dictionary definitions of the adjective "corrupt" quoted in North I do nothing to alleviate the vagueness problem involved in attempting to apply the term "corruptly" to Poindexter's conduct. "Vague terms do not suddenly become clear when they are defined by reference to other vague terms." Words like "depraved," "evil," "immoral," "wicked," and "improper" are no more specific – indeed they may be less specific – than "corrupt." As used in § 1505, therefore, we find that the term "corruptly" is too vague to provide constitutionally adequate notice that it prohibits lying to the Congress.

*Poindexter*, 951 F.2d at 377–80.

Here, nothing in the legislative history of § 1512(c)(2) or legal precedents sufficiently narrows the term "corruptly" to pass constitutional muster especially in the context of First Amendment activities.

The term "otherwise" is even more facially vague. If otherwise includes the entire universe of conduct, then it is facially vague and unconstitutional.

A penal statute that contains facially vague terms is unconstitutional.

**B.    Section 1512(c)(2) is Unconstitutional as Applied to Ms.  Bauer's Conduct**.

Even were the Court to consider the legislative history of § 1512(c) or the term "corruptly" as applied in this case, the statute is still unconstitutionally vague as to Ms.  Bauer.  As quoted above, the pertinent law interpreting the elements of § 1512(c)(2) define "corruptly" to include making false statements or encouraging others to do so; falsifying documents; or destroying evidence.  But none of those circumstances are alleged in this case.

Another common definition of "corruptly"

> means that in acting, the defendant aimed to obtain an "improper advantage for [himself] or someone else inconsistent with official duty and rights of others." Then someone who influences another to violate his legal duty has not acted corruptly if his purpose is, for example, to cause the enactment of legislation that would afford no particular benefit to him or anyone connected with him.

*Poindexter*, 951 F.2d at 385- 86 (internal citations omitted).  But again, as applied to the Indictment in this case, there is no allegation that Ms.  Bauer acted to gain an "improper advantage" for herself or anyone connected with her; or that she paid or received a bribe or a gratuity.

Moreover, as the Indictment is drafted, the term "otherwise" is limitless, has no textual or other constraints and therefore fails to give fair notice.  The charges are not limited to other documents, by reference to § 1512(c)(1).  The charges are not limited by reference to the title of §1512 to "[t]ampering with a witness, victim, or an informant."  The charges are not limited to false statements, self-dealing, or shredding of evidence by reference to corporate fraud and accounting scandals that impelled passage of the Sarbanes Oxley Act.  Nor does case law give any hint that "otherwise" could reach actions by persons engaged in a political demonstration.

In sum, nothing in § 1512(c)(2) would have given fair notice to Ms. Bauer or to any person of common intelligence, that if she entered the United States Capitol for a short time, without injuring anyone or damaging any property while associated with others seeking to petition the Congress her conduct would run afoul of 18  U.S.C. § 1512(c)(2) and subject her to imprisonment for a term of 20 years.

C.      **The Congress' Certification of the Electoral College Vote is Not an Official Proceeding**

Count One charging Ms. Bauer with violating § 1512(c)(2), rests on the legal theory that she obstructed, impeded and interfered with the joint session of Congress on January 6, which the Indictment characterizes as an "official proceeding" under that statute. Because the joint session's Electoral College vote count did not exercise Congress's implied power of investigation in aid of legislation but instead "formalized the result of the 2020 U.S. Presidential election," the joint session did not constitute an "official proceeding" as that term has been construed in every reported § 1512(c)(2) case on the subject.

It is settled law that proceedings held pursuant to Congress's legislative power under the Constitution exhibit legal characteristics different from those held under its implied and auxiliary power of investigation. *See*, *e.g.*, *Trump v. Mazars United States*, 940 F.3d 710, 719-23 (D.C. Cir. 2019) (outlining history of Congress's power to investigate in aid of legislation). In its earliest decision to draw a formal distinction between the legislative and investigative powers, the Supreme Court held that the House of Representatives had exceeded its investigatory authority by opening an inquiry into the bankruptcy proceedings of a firm in which the United States had invested money. *Kilbourn v. Thompson*, 103 U.S. 168 (1881). The Court held that Congress's sole route to a remedy in the bankruptcy proceeding was "by a resort to a court of justice" *id.* at 183, because the House's investigation "could result in no valid legislation." *Id.* at 195. Later, in *McGrain v. Daugherty*, the Court found that Congress properly issued a subpoena for bank records relevant to the Senate's investigation into the Department of Justice because "the subject to be investigated was . . . [p]lainly [a] subject . . . on which legislation could be had." 273 U.S. 136, 176 (1927).

15

Cases involving defendants' attempts to interfere with Congress's auxiliary investigative power have always included actions that prevent, or are designed to prevent, Congress from hearing evidence and making factual findings: refusals to answer congressional committees' requests, *United States v. Rumley*, 345 U.S. 41, 42 (1953); refusals to testify at congressional hearings, *Barenblatt v. United States*, 360 U.S. 109 (1959); and obstructing proceedings by making false statements to a congressional inquiry, *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991). All of these cases have indisputably involved alleged inference with Congress's exercise of its investigative power.

That Congress intended to limit congressional obstruction prosecutions to acts interfering with its investigative power is seen in the text and structure of Chapter 73 of title 18, concerning "Obstruction of Justice." As noted above, although the government charges Ms. Bauer with a violation of § 1512(c)(2), it is § 1505 that criminalizes obstruction of congressional proceedings "by threats or force." § 1505. The government did not use that more appropriate statute here for a simple reason. Section 1505 explicitly requires that the obstructed proceeding be an "inquiry or investigation . . . being had by either House, or any committee of either House or any joint committee of the Congress." § 1505. Here, the Congressional Record unequivocally shows the joint session was not exercising Congress's investigatory power on January 6. To the contrary, it shows that members of the House and Senate requested but did not receive such power. 167 Cong. Rec. H79, 105-06, 108, 111 (2021); 167 Cong. Rec. S16, 25, 32 (2021).

Chapter 73's other sections betray a uniform, targeted focus on the obstruction of proceedings related to the administration of justice. They exhibit that purpose either by focusing on the

investigation affected by the obstruction,[13] or on the actor whose key role in the administration of justice has been affected by the obstruction.9 Similarly, Section 1515's definition of "official proceeding," as that term is used in § 1512(c)(2), contains an array of proceedings that involve the administration of justice:

(a) As used in sections 1512 and 1513 of this title and in this section—

(1) the term "official proceeding" means—

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) a proceeding before the Congress;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce;

18  U.S.C. § 1515(a)(1).

Attempts by the government to charge defendants with violations of § 1512(c) outside this context of a judicial or quasi-judicial proceeding have uniformly failed. In *United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013), for example, the government argued that an FBI investigation qualified as an "official proceeding" under § 1515. The Ninth Circuit rejected that argument.

---

[13]    § 1510 (criminalizing interference with criminal investigation through bribery), § 1516 (obstruction of federal audit), § 1517 (obstruction of examination of financial institution), § 1518 (obstruction of health care investigation), § 1519 (obstruction of federal investigation through document destruction and falsification).

The court of appeals determined that the specifically legal definition of "proceeding"—associated with formal appearances before a tribunal—was the right one for several reasons.  First, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings." *Id.* at 1170. Second, the word "proceeding" in § 1515(a)(1) is "surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'federal grand jury,' 'Congress,' and 'federal government agency.'" *Id*. Third, legal dictionaries define "proceeding" as "'a word much used to express the *business done in courts*.'" *Id.* (quoting Black's Law Dictionary 1241 (8th ed. 2004)) (emphasis original). Fourth, the "use of the preposition 'before' suggests an appearance in front of [a body] sitting as a tribunal." *Id.* at 1171.  Fifth, "Section 1512 refers to 'prevent[ing] the attendance or testimony of any person in an official proceeding'; 'prevent[ing] the production of a record, document, or other object, in an official proceeding'; and 'be[ing] absent from an official proceeding to which that person has been summoned by legal process.' 18 U.S.C. § 1512(a)(1)(A)-(B), (a)(2)(B)(iv).  The use of the terms 'attendance,' 'testimony,' 'production,' and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated." *Id.* at 1172.

Every single one of those factors applies to the phrase "a proceeding before the Congress." § 1515(a)(1)(B).  The joint session on January 6 was not an exercise of Congress's investigatory power.  167 Cong. Rec. H79, 105-06, 108, 111 (2021); 167 Cong. Rec. S16, 25, 32 (2021). The Indictment does not allege Ms.  Bauer's "obstruction" of Congress on January 6 in the sense meant by all § 1512 precedent: the prevention of a tribunal's ability to hear evidence and make factual findings.

### III.     The Rule of Lenity Dictates That Any Ambiguities in § 1512(c)(2) Be Resolved in Ms. Bauer's Favor

Even if § 1512(c)(2) is not unconstitutionally vague as applied to Nordean, any ambiguities in the statute should be resolved in his favor under the rule of lenity. Under that principle, "where text, structure, and history fail to establish that the government's position is unambiguously correct," courts must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994). "When interpreting a criminal statute, we do not play the part of a mindreader." *United States v. Santos*, 553 U.S. 507, 515 (2008) (Scalia, J.). "In our seminal rule-of-lenity decision, Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent. 'Probability is not a guide which a court, in construing a penal statute, can safely take.'" *Id.* (quoting *United States v. Wiltberger*, 18 U.S. 76 (1820)).

Here, even if the Court decides that the government's interpretation of § 1512(c)(2) is correct – i.e., that "official proceedings" of Congress include those which are not held pursuant to its investigatory power, that § 1512(c)(2) applies outside the context of document destruction, and that "corruptly" includes a disinterested but mistaken purpose—it is plainly not unambiguously so. That is shown by the lack of any case law supporting the government's interpretations, by the legislative history which tells against those interpretations, and by the text and structure not just of § 1512(c) but of all sections of Chapter 73.

Because the government's interpretations are not unambiguously correct, the Court is required to resolve any ambiguities in Ms. Bauer's favor by dismissing Count One. *Granderson*, 511 U.S. at 54; *Santos*, 553 U.S. at 515.

**IV.     The Indictment's Application of § 1512(c)(2) Is Invalid under the First Amendment, as Applied to Ms. Bauer**

Ms. Bauer's activities on January 6 included political expression, assembly and petitioning of the government for a redress of grievances. U.S. Const. amend. I. Insofar as the § 1512(c)(2) charges characterize protest per se as obstruction of congressional proceedings, they are unconstitutional applications of the statute as applied to Ms. Bauer. To prevail on an as-applied challenge under the First Amendment, Nordean must merely show that § 1512(c)(2) is being unconstitutionally applied as to the specific protected activity for which she is charged. *Edwards v. Dist. of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014). The first question is whether Ms. Bauer's alleged conduct was "expressive." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). "[T]o bring the First Amendment into play," Ms. Bauer must merely show "[a]n intent to convey a particularized message was present" and "the likelihood . . . that the message would be understood by those who viewed it." *Id.* Next, the court assesses whether the challenged statute is related in any way to the suppression of free expression. If so, and if the law is content-neutral, the court must subject the statute to intermediate scrutiny. *Edwards*, 755 F.3d at 1002. Under that standard, the statute is constitutionally applied only if (1) "it is within the constitutional power of the government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

Here, it is clear that the conduct charged under § 1512(c)(2) was protected expression. The entire thrust of the Indictment, the § 1512(c)(2) offense and the misdemeanor counts is that Ms.

Bauer and others protested at the Capitol concerning the results of the 2020 presential election. That is the very core of the First Amendment. *See*, *e.g.*, *Johnson*, 491 U.S. at 404 (flag burning expressive); *Tinker v. Des Moines Ind. Comm. School. Dist.*, 393 U.S. 503, 505 (1969) (students wearing black armbands to protest war is expressive); *Brown v. Louisiana*, 383 U.S. 131, 141-142 (1966) (sit-in to protest segregation expressive); *United States v. Grace*, 461 U.S. 171 (1983) (picketing is expressive). *See also Snyder v. Phelps*, 562 U.S. 443, 444 (2011) ("A statement's arguably inappropriate or controversial character . . . is  irrelevant to the question [of] whether it deals with a matter of public concern.").

Similarly, there is no argument that § 1512(c)(2)'s application here is unrelated to the suppression of expression, assembly and the petitioning of the government for a redress of grievances.  Again, the thrust of the obstruction and other counts is that Ms.  Bauer and her co-defendant intended to affect the actions of Congress:  otherwise known as political demonstration and protest. Critically, the Indictment's obstruction theory encompasses the very act of protesting to affect congressional action itself. Accordingly, § 1512(c)(2) is here "related to the suppression of free expression." *See*, *e.g.*, *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016) (restricted area statute "related to the suppression of free expression" where charged defendant jumped White House fence to protest executive action).  Accordingly, under an intermediate scrutiny test, the Court applies the *O'Brien* factors to determine the constitutionality of § 1512(c)(2)'s application here. The following two factors show that the statute's application here is patently unconstitutional: (1) the government's interest *is* related to the suppression of free expression; and (2) the incidental restriction on First Amendment freedoms *is* greater than is essential to the furtherance of that interest. *O'Brien*, 391 U.S. at 377. As explained, that the § 1512(c)(2) theory in this case is not

limited to an attempt to influence Congress by threats or force can only mean that it covers acts that influence Congress through protest and demonstration.  Accordingly, the Indictment §1512(c)(2) charges against Ms.  Bauer unconstitutionally infringe on her First Amendment rights and should be dismissed.

**CONCLUSION**

For all the above noted reasons, and any that may be presented at a hearing on this matter and that are fair and just, this Honorable Court should dismiss Count I of the Indictment for failure to state an offense.  In addition, Count I  should be dismissed because 18  U.S.C. § 1512(c)(2) is so vague that it fails to give fair notice to Ms.  Bauer in violation of the Due Process Clause of the Fifth Amendment.  Counts I and II should also be dismissed because the prosecution violates rights afforded  to her under the First  Amendment and the Due  Process Clause of the United States Constitution.

Respectfully submitted,

/s/ Carmen D. Hernandez
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on all counsel of record 22nd day of July, 2021 on all counsel of record via ECF.

/s/ Carmen D. Hernandez

**Carmen D. Hernandez**