**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 1:21-cr-00386-TNM-2** |
| | : | |
| **PAULINE BAUER** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION**
**TO DEFENDANT BAUER'S MOTION TO DISMISS (ECF No. 80)**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully files this opposition to the Motion to Dismiss by defendant Pauline Bauer. (ECF No. 80).   Defendant argues that Count One of the indictment fails to state an offense.   Defendant is wrong, Count One of the indictment charges defendant with attempting to, and actually accomplishing, corruptly obstructing, influencing, and impeding an official proceeding, "that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18."   *See* ECF No. 11, 18 U.S.C. § 1512(c)(2) and (2).   Defendant argues that forcing her way into the Capitol building on January 6 was simply an exercise of her First Amendment rights by protesting—and thus that Section 1512(c)(2) cannot be constitutionally applied to her.   This argument is specious.   Notwithstanding defendant's efforts to characterize her conduct as mere "political demonstration and protest," defendant intentionally invaded the Capitol grounds and then the Capitol building itself.   Many rioters, including defendant, then impeded or assaulted law enforcement while inside. These unlawful actions by defendant plainly distinguish her conduct from lawful assembly.   Further, Count One need not be dismissed because the words "corruptly" and "otherwise" are not unconstitutionally vague.

## INTRODUCTION

Defendant claims that her activities inside the United States Capitol on January 6, 2021 was protected First Amendment freedom.   She claims she was simply exercising her right to freedom "of speech, of association, and of assembly to petition the Government for redress of grievances." ECF No. 80, pg. 4.

Defendant forced her way into the United States Capitol on January 6, 2021 at a time when it was closed to the public and after law enforcement erected barricades around the Capitol Building.   The U.S. Capitol was closed to all members of the public on January 6, 2021, and had been closed since approximately March of 2020.   Moreover, the United States Capitol Police (USCP) actively cordoned off the area around the U.S. Capitol on January 6, 2021 to prevent people from interfering with the Electoral College Certification process.   The area was barricaded with bicycle racks, fencing, and Area Closed signs.

  

Nevertheless, rioters broke through the clearly marked barricades and stormed the Capitol.

 

Specifically, on the East Side of the Capitol where defendant forced entry, rioters can be seen

forcing their way into the Capitol Building, and the smashed-out Capitol window is apparent.



Main "Columbus" Doors 1:45 - 4:00 pm - 34 video sync - Jan 6th Capitol Attack Footage

At approximately 2:43 p.m., defendant is recorded entering the Capitol building via the East

Rotunda door.



At the time of defendant's entry, there were at least three police officers in the area of the door attempting to stop the crowd from entering the building.   ECF No. 2-1, pg. 10.   At 2:57, defendant confronts law enforcement inside the Capitol Rotunda and yells for law-enforcement to "bring them out or we're coming in" and "bring them out now, they're criminals and they need to hang."



Defendant screams, "bring Nancy Pelosi out here now we want to hang that f____g b ____h!"

4



Defendant screams, "we're coming in if you don't bring her out."    An officer in riot gear pushes

defendant back as she is moving forward towards the officer and towards the interior of the

Capitol.



As the officer pushes defendant back, she yells "f__ you - you son of a bitch, you back up," and

pushes the officer.

5



At approximately 3:02 p.m., defendant gets involved in another brief skirmish with law

enforcement at the South entrance.    ECF No. 2-1, pg. 11.





It is against this background that defendant claims she was simply exercising her "First

6

Amendment freedoms – of speech, of association, and of assembly to petition the Government for redress of grievances." ECF No. 80, pg. 4.

Defendant is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021.   The charges stem from her presence and conduct inside the United States Capitol on January 6, 2021.   *See* Complaint and Statement of Facts, *United States v. Bauer*, Case 1:21-cr-00386-TNM, ECF No. 2-1, *see also* Opposition to Motion Challenging Jurisdiction, *United States v. Bauer*, Case 1:21-cr-00386-TNM, ECF No. 52. Defendant is charged with five federal offenses: 18 U.S.C. §§ 1512(c)(2), and 2 (Obstruction of an Official Proceeding); 18 U.S.C. § 1752(a)(l) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).

## ARGUMENT

Before trial, a defendant in a criminal case may move to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v).   A valid indictment must set out "the elements of the offense intended to be charged and sufficiently apprise defendant of what he must be prepared to meet." *United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004). The Government must state the essential elements of the crime and allegations "with sufficient specificity." *United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995), *see also United States v. Griffin*, Case No. 21-cr-00092 (TNM) (D.D.C., Jul. 2. 2021).

A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the

merits." *Id.*   "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*   Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that defendant is alleged to have violated."

## I.   Section 1512(c) is not "buried" in another statute

Section 1512(c) is not buried in another statute and the plain language of the statute makes it clear that an official proceeding is defined as "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1).   Congress enacted a prohibition on "Tampering with a record or otherwise impeding an official proceeding" in Section 1102 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807, and codified it within the pre-existing Section 1512 as subsection (c). That prohibition applies to

(c) [w]hoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.*

18 U.S.C. § 1512(c) (emphasis added).

Defendant argues that "if Congress had wanted to criminalize the conduct charged in the Indictment, it could have done so by expanding § 1507 to include picketing at the Capitol." ECF No. 80, pg. 6. She further argues that Congress could have extended §1505, which prohibits obstructing with Congressional inquiries and investigations, to "all sorts of Congressional proceedings and not just those engaged in investigations." *Id.* Defendant's argument misses the point and ignores the plain language of 18 U.S.C. §§ 1512(c) and 1515(a)(1)(B), which defines "official proceeding" in no uncertain terms as "a proceeding before the Congress."

Defendant also argues that the word "otherwise" in Section 1512(c) is vague as it applies to her. ECF No. 80, pg. 5. She is wrong. As used in Section 1512(c)(2), "otherwise" provides fair notice to defendants, "in plain language," that obstructive acts other than those described in Section 1512(c)(1)—which covers obstruction aimed at a record, document, or object—violate the statute. *See United States v. Petruk*, 781 F.3d 438, 446 (8th Cir. 2015). The Seventh Circuit similarly concluded that Section 1512(c)(2) "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction, which is listed in (c)(1)." *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (internal quotation omitted).

The word "otherwise" has its common definition—differently from others. *See* Webster's New World College Dictionary 1021 (4th ed. 2007) (defining "otherwise" as "in another manner; differently"). Here, defendant was on fair notice, including from these judicial interpretations and dictionary definitions, that one could obstruct an official proceeding in ways other than with respect to a record, document, or object.

9

Defendant also gets no support from *Yates v. United States,* 574 U.S. 528 (2015). The plurality opinion relied on the canon of ejusdem generis to interpret as alike "general words" that follow "specific words in a statutory enumeration." *Id.* at 545. But whereas the language in Section 1519 was part of a single paragraph, the language in Section 1512(c)(2) is contained in a completely separate subsection from (c)(1). *Cf. Begay v. United States*, 553 U.S. 137, 144 (2008) (holding that a statute's use of "or otherwise" in a sentence after a list of examples requires something similar to the examples), *abrogated on other grounds* by *Johnson v. United States*, 576 U.S. 591 (2015).

As noted above, when Congress passed the Sarbanes-Oxley Act, it titled the section that created Section 1512(c) as "Tampering with a Record or ***Otherwise Impeding an Official Proceeding***," suggesting that (1) "tampering with a record" be a separate provision from (2) "otherwise impeding an official proceeding." Pub. L. 107-204, § 1102 (2002) (emphasis added).

## II.    The Obstruction Statute Charged in Count One Is Not Unconstitutionally Vague

Defendant argues that Section 1512(c) is unconstitutionally vague. Her argument lacks merit. The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United*

*States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)).   To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).   "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'"   *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)).   Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application.   *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974).   The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that defendant's conduct was criminal."   *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'"   *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)).   A statute is instead vague where it fails to specify any "standard of conduct . . . at all."   *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971).   "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances

where a man's fate depends on his estimating rightly . . . some matter of degree.'"   *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Defendant fails to overcome the strong presumption that Section 1512(c)(2) passes constitutional muster.   *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").   Section 1512(c)(2) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604.   Section 1512(c)(2)'s prohibition on "corruptly . . . obstruct[ing], influenc[ing], or imped[ing]" an "official proceeding" gives rise to "no such indeterminacy."   *Williams*, 553 U.S. at 306.   The statute requires that a defendant, acting with consciousness of wrongdoing and intent to obstruct, attempts to or does undermine or interfere with a statutorily defined official proceeding.   While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'"   *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).

Moreover, this Court recently considered the "void for vagueness" doctrine in the context of a January 6, 2021 charged offense, albeit under a different statute.   The court noted that Section

1752 "is capacious, not ambiguous." *See* Memorandum Opinion and Order, *United States v. Griffin*, 21-CR-92 (D.D.C., Jul. 2, 2021), ECF No. 41.   Similarly, Section 1512(c) may also be capacious, but it is not ambiguous.

Charging defendant Bauer under 18 U.S.C. § 1512(c)(2) was entirely proper.   The mere fact that multiple criminal statutes apply to an individual's conduct does not render prosecution under one (or more) of those statute suspect; indeed, "overlap" is "not uncommon in [federal] criminal statutes." *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *accord Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *see also United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").

## A.     Section 1512(c)'s "corruptly" language is not void for vagueness

Defendant's more targeted attack on "corruptly," relying on *United States v. Poindexter*, is equally unavailing.   The D.C. Circuit in *Poindexter* held that the term "corruptly" was "vague . . . in the absence of some narrowing gloss."   951 F.2d at 378.    *Poindexter* is inapposite for three reasons.[1]

First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all

---

1 *Poindexter* was also superseded in significant part by the False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459.   As codified at 18 U.S.C. § 1515(b), the Act provides that the term "corruptly" in § 1505 "means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement."

conduct." 951 F.2d at 385.   Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial.   *Id*. at 629-30.   Other courts have similarly recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances."   *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also, e.g.*, *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503). Defendant's invocation of *Poindexter* accordingly fails to establish that Section 1512(c) suffers the same constitutional indeterminacy.

Second, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005).   There, the Court explained the terms "'[c]orrupt" and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil."   *Id*. at 705 (citation omitted).   In doing so, the Court "did not imply that the term was too vague."   *Edwards*, 869 F.3d at 502.   Third, and as noted above, courts have encountered little difficulty when addressing "corruptly" in Section 1512(c)(2) following *Arthur Andersen*.   Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries. Defendant provides no support for her position.   Nor could she.   "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).   Here, defendant intended to obstruct, influence, or impede the congressional proceeding, and, in fact, did so. Defendant's actions to

obstruct the proceeding were not lawful acts of protest in support of a "sincerely held political belief," but rather were "wrongful, immoral, depraved, or evil" acts, i.e., the unlawful and violent invasion of the Capitol and its grounds and interference with federal law enforcement deployed to protect the Capitol and its occupants on January 6. *See United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing"); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose and to engage in conduct knowingly and dishonestly with specific intent to subvert, impede, or obstruct") (internal quotation omitted); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007) (upholding instruction defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512 ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."). The word "corruptly" therefore does not render Section 1512 unconstitutionally vague.[2]

### B. The Congress' Certification of the Electoral College Vote is an Official Proceeding

Defendant argues that Congress's certification of the Electoral College vote on January 6, 2021, does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That argument lacks merit.

### 1. Background

---

[2] For the same reasons, defendant's as-applied challenge based on the words "corruptly" and "otherwise" (see ECF No. 80, pg. 13-14), also fails.

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President, while acting as the President of Senate, "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id*. The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The obstruction statute with which defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding. 18 U.S.C. § 1512(c)(2). An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

16

(B) *a proceeding before the Congress*;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

2.  Certification of the Electoral College vote is a proceeding before the Congress

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That conclusion flows principally from the obstruction statute's plain text. Skipping past the text, defendant argues that Congress's intent and other language in the obstruction statute import a requirement that the "official proceeding" relates to the administration of justice. That argument is incorrect.

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013). The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." Id. (quoting Proceeding, Oxford English Dictionary, available at http://www.oed.com). Defendant does not meaningfully contend that the certification of the Electoral College vote, which

17

involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding—under that broad definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly. Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); see S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515—including the cases relied upon by defendants—courts analyze the degree of formality involved in an investigation. See, e.g., *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), cert. denied, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because

18

the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term "contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "formal investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added).

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Required by law to begin at 1:00 p.m. on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. Id. And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." See 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker

19

"immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until "the count of electoral votes" is "completed," and the "result declared." Id. In short, the certification of the Electoral College vote is a "proceeding before the Congress." See 18 U.S.C. § 1515(a)(1)(B).

3.   The "proceeding before Congress" is not limited to proceedings solely related to the administration of justice

Defendant incorrectly asks this Court to limit the interpretation of the "proceeding before the Congress" to encompass only the corrupt obstruction of proceedings before Congress related to the administration of justice such as a congressional committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence. But this narrow reading of the statute finds no textual support when applied to Section 1515(a)(1)(B), which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, as defendant contends, it needed look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. Indeed, § 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). If Congress could limit the obstruction prohibition under § 1505 to congressional investigations, it could have done so in the text of § 1515(a)(1)(B). *See Russello v. United*

20

*States,* 464 U.S. 16, 23 (1983) (refraining from concluding that "differing language in the two subsections has the same meaning in each"). But it did not. Instead, Congress enacted broader language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. That broader definition includes the Electoral College vote certification.

Rather than engage with Section 1515's text, defendant relies on surrounding statutory provisions and legislative intent to argue that the certification of the Electoral College vote is not an official proceeding because it does not affect the "administration of justice."   That approach fails in three respects. First, it is methodologically flawed. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (*quoting Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, a proceeding before the Congress. Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted).   Defendant offers no rationale for breezing past the statute's plain text to reach for other interpretive tools.   Second, the other statutory tools on which defendant purports to rely does not aid her argument. Defendant contends that Section 1512's title—"Tampering with a witness, victim, or an informant"—implies that the "official proceeding" definition in Section 1515 does not cover the Electoral College vote certification. See ECF No. 80, pg 5.   But this contention runs headlong into "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947).   In

any event, the specific statutory provision under which defendants are charged, 18 U.S.C. § 1512(c)(2), explicitly reaches more broadly than tampering: it "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (*quoting United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2104)).

Finally, defendant's narrowed reading of "proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B)—importing an extra-textual "administration of justice" requirement— would undercut the broad statute that Congress enacted. See ECF No. 80, pg. 17-18.   Defendant does not explain which congressional proceedings would fall within the ambit of her narrowed definition. That crabbed approach fails to recognize that the certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes." *Sutherland*, 921 F.3d at 426. Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, the Electoral College vote certification falls well

within them.[3]

---

[3] Defendant's challenge fails even if she were correct—and she is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be related to the a formal hearing before a tribunal.   ECF No. 80, pg. 18.   Far from informal, the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding. It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]." 3 U.S.C. § 15. That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election. As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it. Id. And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it

### III.    The rule of lenity does not apply

Defendant's rule of lenity argument fails, as it is only a canon of "last resort."    *Guedes v. Bureau of Alcohol, Tobacco & Firearms*, 920 F.3d 1, 27-29 (D.C. Cir. 2019).    The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." Barber v. Thomas, 560 U.S. 474, 488 (2010) (internal citation and quotation omitted). There is no grievous ambiguity here.

Here, defendant took intentional and unlawful action to disrupt a Joint Session of Congress. Section 1512(c)(2) criminalizes "corruptly" obstructing an "official proceeding." Section 1515(a)(1)(B) defines that term to include a "proceeding before the Congress," which, as discussed above, encompasses Congress's certification of the Electoral College vote.

Unlike some statutes, which may require complicated compliance regimes, defendant could have easily complied with the law on January 6.    She could have voiced her support for the candidate or cause in constitutionally protected free speech outside of the Capitol grounds.    Or she could have applied political pressure on enough legislators to object and not vote to certify in favor of the eventual winner. No guess work was needed to comply with the law.

### IV.    The Indictment's Application of § 1512(c)(2) Is Not Invalid under the First Amendment, as Applied to Ms. Bauer

In *Texas v. Johnson*, 491 U.S. 397, 403, (1989), the Supreme Court explained the procedure for determining whether a defendant may invoke the First Amendment to challenge a criminal charge. First, the court must determine whether defendant's conduct "constituted expressive

---

has "declared" a "result." 3 U.S.C. § 16.

conduct." *Id*. If the conduct was not expressive, the challenge fails. *Id*. Second, if the conduct was expressive, the court must determine if the statute is "related to the suppression of free expression." *Id*. If the statute is not related to the suppression of free expression, the court applies the "less stringent standard" for noncommunicative conduct laid out in *United States v. O'Brien*, 391 U.S. 367, 377 (1968). *Johnson*, 491 U.S. at 403. If the statute is related to the suppression of free expression, the court must apply a "more demanding standard" to determine if the government's interest justifies imposition of criminal liability. *Id*.

Under *O'Brien*, the statute is constitutional only if (1) "it is within the constitutional power of the government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377.

Defendant's conduct was not "expressive," and thus her challenge fails before reaching the *O'Brien* factors.   Whatever she was doing at the political rally near the White House in the morning (ECF No. 80, pg. 4), or while walking to the Capitol midday, it is uncontroverted that once she entered the Capitol grounds it was her presence, not her "expressive conduct" (or speech) that was unlawful.   As an example, say a person, believing an ongoing trial to be unjust, breaks into a courtroom in order to delay a judge from presiding over the trial, and accomplishes that delay by both her presence in the courtroom and her shouting at the judge. The First Amendment does not protect the person from an obstruction of justice charge; her "expressive conduct" of shouting at the judge is not the conduct that the statute criminalizes.   To the contrary, it is the person's *actus reus* (presence and physical disturbance in the courtroom) coupled with her *mens*

*rea* (corruptly intending to prevent the trial from proceeding) that violates the obstruction statute. The same is true here.

But even if the *O'Brien* factors apply, defendant's argument still fails.   Here, the government interest in protecting the integrity and continuity of congressional proceedings is unrelated to any incidental impact that the application of the law may have on the ability to petition government for a redress of grievances.   Second, the statute goes no further than what is "essential" to prevent the obstruction of official proceedings of Congress.   The Supreme Court has upheld restrictions on demonstrations in Washington, D.C., with far less at stake than the integrity of the U.S. Presidential Election. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (upholding a ban on overnight camping on the National Mall and finding a "substantial Government interest in conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties").

WHEREFORE, the government respectfully requests that this Court deny Defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:   /s/ James D. Peterson
AMANDA FRETTO
JAMES D. PETERSON
Bar No. VA 35373
United States Department of Justice

1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
James.d.peterson@usdoj.gov