UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 1:21-cr-00386-TNM-2 |
| : | |
| PAULINE BAUER : | |
| : | |
| Defendant. : | |

### UNITED STATES' OPPOSITION
### TO DEFENDANT BAUER'S NOTICE AND THIRD REQUEST FOR RELEASE [ECF No. 88]

The United States of America by and through undersigned counsel, files this response to the Notice of Impracticability of Discovery Review and Third Request for Release by defendant Pauline Bauer. [ECF No. 88]. At the December 21, 2021 status conference, the Court did not require a response from the government. The government opposes defendant Bauer's request, and files this response to complete the record in this matter.

### FACTUAL BACKGROUND

Defendant is charged via indictment with offenses that occurred at the United States Capitol on January 6, 2021. The charges stem from her presence and conduct inside the United States Capitol on January 6, 2021. *See* Complaint and Statement of Facts, *United States v. Bauer*, Case 1:21-cr-00386-TNM Document 2-1, see also Opposition to Motion Challenging Jurisdiction, *United States v. Bauer*, Case 1:21-cr-00386-TNM, ECF No. 52. Defendant Bauer is charged with five federal offenses: 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding); 18 U.S.C. § 1752(a)(l) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 40

U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).

Defendant Bauer was arrested on May 19, 2021. ECF No. 10. When defendant Bauer initially appeared on June 21, 2021 she was held in contempt and detained when she refused to accept the conditions of release. Minute entry June 21, 2021. She was remanded and held without bond until the next day. *Id*. The next day, on June 22, 2021 defendant Bauer was released under standard conditions. *See* Minute entry June 22, 2021. On or about July 8, 2021 the government filed a Notice of Discovery by USA as to PAULINE BAUER detailing initial discovery provided, including eleven videos of body worn camera footage from five officers. Based upon information and belief, that discovery was provided to defendant Bauer when she was at liberty. On or about September 17, 2021, defendant Bauer was remanded to the custody of the U.S. Marshals. Substantial discovery has been provided to defendant Bauer both individually and through standby counsel. Further, on or about December 16, 2021, a copy of the defendant's unscoped Facebook return and unscoped cell phone extraction information was provided to standby counsel. On December 22, 2021, a copy of the defendant's unscoped Facebook return and unscoped cell phone extraction information was provided to defendant Bauer at the jail. The same day, a re-production of the case-specific discovery produced to date was also delivered to defendant Bauer. The government has confirmed that defendant Bauer received E-Discovery and access to a laptop at the jail on December 29, 2021. Based upon information and belief, the defendant will receive directly a substantial portion of the discovery made available to all defendants globally through their counsel on January 5, 2022. The case specific discovery that has been provided to both Ms. Bauer and her standby Counsel consists of Body Worn Camera (BWC) video recordings as well as CCTV video recordings of her conduct

in the United States Capitol for the approximately 45 minutes on January 6, 2021 that she was inside the Capitol Building.

## ARGUMENT

The Defendant claims that the current detention conditions frustrate her ability to access the voluminous discovery provided by the government in this case and to adequately prepare her defense, ECF No. 88, but that claim does not provide a basis for the relief she seeks -- release from detention. There is no question that the defendant is entitled to reasonable access to discovery and the opportunity to meaningfully confer with counsel, if she so chooses. However, the defendant cites no authority suggesting that her complaints justify reopening the detention hearing and ordering her release. Indeed, the concerns raised by the defendant are independent of the factors this Court must analyze in making a detention decision under the Bail Reform Act.

The defendant cites no authority—and the government is not aware of any—standing for the proposition that restrictive housing or any of the other conditions at the jail raised by the defendant entitle her to release under the Bail Reform Act. The defendant argues that three claims justify the relief she requests: the discovery in this case, much of which is digital and designated as "highly sensitive" by the Government is voluminous, the resources available for reviewing such materials at the DOC are limited, and as a *pro se* defendant, Ms. Bauer's need to review the discovery is more critical than in the run-of-the-mill case.

The information and argument she proffers does not meet the standard that is required to justify reopening the detention hearing or to support a decision to release the defendant. The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a

3

material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

Previously available information—even if "material"—is not grounds to reopen a detention hearing. *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision." *United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021); see also Lee, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a "material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential.")).   Moreover, the existence of any limitations at the jail is not "new" information.

The government is committed to ensuring the safety all of inmates, regardless of their detention status, but it is also critical to allow the issues to be properly litigated in their proper course. Civil litigation is the proper venue to address complaints of mistreatment by the jail. *See United States v. Brooks*, 2020 U.S. Dist. LEXIS 230323, at *10 (D.D.C. Dec. 7, 2020) ("As the government correctly rejoins, any such constitutional claim must be raised via a separate civil suit and cannot be part of a compassionate-release motion in the underlying criminal case. Courts all over the country have concurred."); *United States v. Smith*, 2020 U.S. Dist. LEXIS 213050, 2020

4

WL 6702173, at *6 n.8 (S.D. Ohio Nov. 13, 2020) (collecting cases); *see, also, e.g., United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions filed in their respective criminal cases . . . they were properly denied by the district court").

The proper way to raise such a claim is to file a civil suit against the Department of Corrections or its warden. *See, e.g., United States v. Folse*, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, No. Cr. 99-433 WBS GGH, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties . . . rather than a motion in his criminal case."); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action."); *Campbell v. McGruder*, 416 F. Supp. 100, 101 (D.D.C. 1975) (addressing "class action brought by unconvicted pre-trial detainees incarcerated at the District of Columbia jail"). Here, as discussed above, the Bail Reform factors, even taking into consideration the circumstances of COVID-19 and this defendant, remain in favor of detention.

As this Court may know, on March 30, 2020, a civil complaint was filed in the United States District Court for the District of Columbia, on behalf of defendants detained at the Central Detention Facility and Central Treatment Facility (CTF), alleging that by the D.C. Department of Corrections (DOC) was failing to take reasonable precautions to prevent the spread and severity of a COVID-19 outbreak.  That case, *Banks v. Booth* (20-cv-849), was assigned to a Court, who on April 19, 2020 issued a temporary restraining order (ECF No. 48), and on June 18, 2020, issued a preliminary injunction (ECF No. 100) that addressed, in part inmates' access to confidential legal calls in light of enhanced restrictions in place to address the pandemic, and ordered DOC to ensure that all inmates have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters, and to "swiftly implement to use of such technology" necessary to accomplish this (ECF No. 100 at 39).

On December 12, 2020, amici filed a report to provide information to the Court regarding DOC's compliance with the Court's June 18, 2020, preliminary injunction (ECF No. 138). That report noted that the DOC had purchased significant amounts of new technology to facilitate attorney client communications, including through the use of cell phones from within their cells; and that the DOC facilitated more than 1500 such calls each month. The report also noted that DOC had purchased a number of tablets that inmates were permitted to use to review discovery and to communicate with their attorneys using secure messaging (see ECF No. 138 at 42). Finally, the report noted that the DOC facilitated 1,209 videoconferences between attorneys and their clients between May and October 2020 (Id. at 40-41).

On March 15, 2021, DOC issued a new procedure for voluminous electronic discovery. The policy would allow her to review electronic materials in her cell on a laptop provided by DOC.

The government's position is that this procedure satisfies the requirements of the Protective Order regarding discovery in this case, so it would not limit the defendant's access to sensitive materials.

Recently, the government filed a status update in the case *United States v. Dominic Pezzola*, CASE NO. 21-cr-52-1 (TJK) addressing the issue, in part, of inmate access to electronic discovery. Because that filing touches on issues raised in the defendant's recent filing, the government includes it here as Exhibit A.

To be sure, the unique and serious complications resulting from the pandemic and defendant Bauer's *pro se* status pose challenges. Those challenges, however, do not require or compel her release from incarceration. Several courts have considered the unique challenges posed by the pandemic and a defendant's access to electronic discovery in jail. *See United States v. Green*, Criminal No. 4:20cr1, 2020 WL 5877893 (E.D. VA, Oct. 2, 2020), *United States v. Dibee*, Case No. 6:06-cr-60011-AA (D. Ore., Jan. 8, 2021), *United States v. Kvashuk*, NO. CR19-0143 JLR, 2020 WL 569862 (W.D. Wash., Feb. 5, 2020), *United States v. Stephenson*, 17-CR-199-A, 2020 WL 7398759 (W.D. N.Y., Dec. 17, 2020). Those cases do not, however, counsel or compel defendant's release from custody.

In *Green*, the District Court considered the defendant's *pro se* objections to continuing a trial date and to the defendant's lack of access to discovery while incarcerated. *Green*, Criminal No. 4:20cr1, 2020 WL 5877893. The Court characterized the purpose of the status conference as follows:

> (1) to address Defendant's pre-trial access to discovery materials subject to a protective order in light of the challenges created by the COVID-19 pandemic, with such access recently complicated by the COVID-19 outbreak at Defendant's jail and the jail's responsive mitigation procedures; and
>
> (2) to allow Defendant an opportunity to be heard on trial scheduling matters in light of the

fact that he still has not reviewed substantial portions of the pre-trial discovery provided by the Government.

*Id*.   Notwithstanding the unique challenges posed by the pandemic, and the limited access to discovery, the Court continued the defendant's trial, holding:

> While a continuance until January is presumably against Defendant's wishes (Defendant voluntarily elected not to present his position on the record at the September 29, 2020, video teleconference), the Court finds that such a continuance is necessary and is clearly in the "interests of justice" in light of the ongoing public health crisis and the critical need for Defendant, who is representing himself, to review discovery. See 18 U.S.C. § 3161(h)(7)(B)(iv) (indicating that when making an "ends of justice" finding, the district court must consider whether "the failure to grant... a continuance... would deny the defendant ... the reasonable time necessary for effective preparation, taking into account the exercise of due diligence").

*Id*. *but see, United States v. Dibee*, Case No. 6:06-cr-60011-AA (inability to conduct even an initial review of discovery after approximately thirty months incarceration and unaddressed medical conditions warranted release).

More recently, and more relevantly, the District Court for the District of Columbia refused to reconsider its detention decision in light of precisely the same arguments advanced by defendant here in at least two cases.   See *United States v. Pezzola*, No. 1:21-cr-52-1 (TJK) (Oct. 27, 2021), *United States v. Lang*, Case No. 21-cr-53 (CJN).   In *Lang*, Judge Nichols concluded that the issues raised by defendant Lang regarding DOC do not affect the Bail Reform Act factors.   Judge Nichols also construed defendant Lang's arguments regarding DOC as a motion to modify his conditions of detention to allow more access to discovery and/or counsel, which he denied without prejudice to the defendant's ability to re-raise if the procedures currently in place prove to be inadequate after the defendant attempts to use them.   In rejecting similar arguments, Judge Kelly held:

> So I do find that Mr. Pezzola has not shown that, quote, Information exists that was not

8

known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. Thus, I will decline to reconsider my earlier decision as to his pretrial detention.

Transcript of hearing, *United States v. Pezzola*, No. 1:21-cr-52-1 (TJK) (Oct. 27, 2021), pg. 10.

The government also notes that, based upon information and belief, conditions for reviewing discovery have improved for defendant.[1] As of December 29, 2021, defendant has access to a laptop computer as well as substantial discovery in this case. Given that access, standby counsel can drop off electronic copies of any of the additional discovery produced for defendant to view.

WHEREFORE, the government respectfully requests that this Court reject and deny defendant Bauer's request for release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:   */s/ James D. Peterson*
AMANDA FRETTO
JAMES D. PETERSON
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
James.d.peterson@usdoj.gov

---

[1] Based upon information and belief, standby counsel for defendant has not, prior to December 30, 2021, attempted to drop off electronic discovery that was previously provided to both defendant and counsel for her review, which would have triggered her access to a laptop.