```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA

  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 21-386-2
vs.                                )
                                   )
PAULINE BAUER,                     )  December 21, 2021
                                   )  10:04 a.m.
              Defendant.           )  Washington, D.C.
                                   )
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE TREVOR N. McFADDEN,**
**UNITED STATES DISTRICT COURT JUDGE**


**<u>APPEARANCES</u>:**


FOR THE UNITED STATES: JAMES PETERSON
                       DOJ-CRM
                       1331 F Street
                       Washington, DC 20530
                       (202) 230-0693
                       Email: james.d.peterson@usdoj.gov




FOR THE DEFENDANT:  CARMEN D. HERNANDEZ
                    7166 Mink Hollow Road
                    Highland, MD 20777
                    (240) 472-3391
                    Email: chernan7@aol.com




Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter



        Proceedings reported by machine shorthand, transcript
             produced by computer-aided transcription.
```

1                        **P R O C E E D I N G S**

2               THE COURTROOM DEPUTY:  Your Honor, this is

3      Criminal Case, 21-386-2, United States of America versus

4      Pauline Bauer.

5               Would the parties please come forward to identify

6      themselves for the record, starting with the government.

7               MR. PETERSON:  Good morning, Your Honor.

8      Jim Peterson for the government.

9               THE COURT:  Good morning, Mr. Peterson.

10              MR. PETERSON:  Thank you.

11              MS. HERNANDEZ:  Good morning, Your Honor.

12     Carmen Hernandez.  Ms. Bauer is present in the courtroom.

13     She's still self-representing; I am just here as standby

14     counsel.

15              THE COURT:  Good morning, Ms. Hernandez; and good

16     morning, Ms. Bauer.

17              THE DEFENDANT:  Good morning, Your Honor.

18              THE COURT:  All right.  We're here for a status

19     conference.

20              I will hear from you, Mr. Peterson.

21              MR. PETERSON:  Thank you, Your Honor.

22              May it please the Court.

23              I am happy to respond to any inquiry by the Court.

24     If the Court wants an update as to discovery, I will

25     represent to the Court that I believe there's been a recent

1    production.  It's my understanding, from speaking with

2    standby counsel, that she has access to all of the

3    government's productions.  Very early on the government

4    produced the defendant-specific information.

5          As the Court knows, I was not the original

6    attorney on this case; I am the second attorney on this

7    case.  I have gone back and reviewed that production.  I

8    have provided an additional production, up-to-date

9    case-specific information, after speaking with the special

10   agent.

11         I think that discovery is certainly ongoing; but I

12   think that we are certainly current in providing that in a

13   vigorous fashion.  I will say -- and, again, I am careful to

14   not tread on areas that the Court is uncomfortable.  We have

15   discussed resolutions of the case; why don't I leave it at

16   that.  And I am happy to respond to more specific inquiries

17   from the Court or from counsel; but potential resolutions of

18   the case have been discussed or proffered, if you will.

19         If the Court is asking me what we anticipate for

20   another date, I will certainly defer to the Court or respond

21   to any input from counsel, standby counsel, or Ms. Bauer

22   herself, whether we set it for another status date or

23   whether we're looking for trial dates; so I don't know.  I

24   think we're prepared to accommodate the Court in whatever

25   fashion the Court would like to proceed.

```
 1              THE COURT:  All right.  It strikes me that we
 2    should probably go ahead and set a trial date.
 3              MR. PETERSON:  Okay.
 4              THE COURT:  How long would you expect your case in
 5    chief to last, sir?
 6              MR. PETERSON:  I think a week is a safe estimate.
 7              THE COURT:  Okay.  I am trying to find a place
 8    where -- I have got a three-week trial.  I have a lot of
 9    trials right now.
10              MR. PETERSON:  I was here on Friday.  I was
11    watching for that to see the courts -- I was trying to find
12    dates; although, I understand it's a struggle for the Court
13    in terms of the fullness of your schedule.  But it is not --
14    a three-week trial, I think, is more challenging for the
15    Court.  We don't anticipate it has any of the complexity or
16    near the complexity of those cases Your Honor was dealing
17    with on Friday.
18              THE COURT:  Well, I don't know if -- I have got a
19    slot here on February 28th; I don't know if -- how the
20    defense will feel about that.
21              MR. PETERSON:  Again --
22              THE COURT:  Are you available then, sir?
23              MR. PETERSON:  I am physically available, yes.  I
24    think with discovery and with some other issues, that may be
25    a little early; but I am physically available on February --
```

1    the week of, you said, February 28th?

2              THE COURT:  Yes.

3              MR. PETERSON:  Yes.  I am physically available

4    that week.

5              THE COURT:  Okay.  Who would like to speak for

6    defense, Ms. Bauer?

7              So, Ms. Bauer, I will tell you where things stand

8    for me.  I have got a pretty busy schedule with trial dates.

9    If you want a trial as soon as possible, I want to try to

10   accommodate you.  If you feel like you are going to need

11   time to go through discovery and want more time, I will

12   accommodate that as well.  So, I guess, I am really looking

13   to you as to how quickly you would like to go to trial.

14             THE DEFENDANT:  Your Honor, I have not had any

15   chance to review any of the evidence against me except for

16   what Ms. Hernandez's private investigator brought me to the

17   jail, and that was just one video.

18             I have not had access.  I put in on November 17th

19   for inmate request, and I have not heard anything back.

20             THE COURT:  Okay.

21             THE DEFENDANT:  I just feel like I cannot even try

22   to defend my case from the D.C. jail.  In the last three

23   days I have been locked down to my cell.  I wasn't even

24   allow- -- the room is so cold you can't get out of bed.  I

25   just -- I don't -- I have no access to defend my case in

1    D.C. jail, sir.

2              THE COURT:  All right.  I am -- I certainly

3    recognize, ma'am, that it is a difficult situation.

4              I think -- I guess I am a little confused why you

5    haven't gotten access to videos.  We do get an update of

6    defendant requests, and maybe Mr. Peterson knows -- has more

7    recent information than I do.  But the last I saw there is a

8    relatively short line for people to get laptops; and I don't

9    recall seeing your name on that list.

10             THE DEFENDANT:  It says right here:  This

11   procedure does not guarantee that inmates will review any or

12   all evidence provided to the DOC.

13             THE COURT:  Right.  So are you saying that

14   you've --

15             THE DEFENDANT:  Currently, there is a several

16   week's long wait list to review evidence on laptops, which

17   fluctuates depending on the demand for service.

18             THE COURT:  So when did you put in your request,

19   ma'am?

20             THE DEFENDANT:  On November 17th.

21             THE COURT:  Okay.  You are saying that you never

22   got one?

23             THE DEFENDANT:  I have never been able to view the

24   evidence, sir.

25             THE COURT:  Okay.

1          THE DEFENDANT:  And I have spoken to other inmates

2     that have put in requests back in June, and they have not

3     been able to review their evidence either.

4          THE COURT:  So, Mr. Peterson, do you have any

5     representations on this?

6          MR. PETERSON:  If may I approach?

7          THE COURT:  Yes.

8          MR. PETERSON:  Thank you, Your Honor.

9          The information that the government has is --

10    coincides with what Your Honor had recited, which is that it

11    is a relatively short wait list.  I think that there are

12    perhaps some other moving parts, and I can't speak to them.

13         I would -- I believe just a couple of weeks ago

14    there was an update that was filed in the case of

15    *United States versus Pezzola*, in terms of an official

16    statement of access to that; I would draw the Court's

17    attention to that.  I can file that if the Court wants; but

18    it is my understanding it is a relatively short wait for

19    laptops.  I did try to get specific information concerning

20    Ms. Bauer before today's hearing.

21         My understanding is that she -- I believe I am

22    correct that she is housed by herself in a cell, which

23    means -- my understanding is that she can get access to a

24    laptop.  And then she can take that laptop back to her cell

25    and then she can at least, for a period of two weeks, review

1       it; and I don't mean this in a light way, but at her

2       leisure, in terms of reviewing it.  I can't speak to the

3       information in terms of loading it in there, whether that's

4       done by counsel or whether her investigator does that.

5               I will say that, because she is pro se, we had a

6       recent discovery production where we provided it directly to

7       counsel, which has been delivered and received.  We have

8       provided to Ms. Bauer -- it will be delivered, my

9       understanding, by personal delivery tomorrow -- not to

10      Ms. Bauer; because if e-discovery gets delivered to

11      Ms. Bauer, I believe it may get confiscated as contraband.

12      But there is an e-discovery procedure.  And so a thumb drive

13      with all of her unscoped -- I have not looked at it;

14      unscoped Facebook information and unscoped cell phone data

15      will be available to her -- will be provided to the jail's

16      e-discovery folks tomorrow.

17              As far as loading on -- as the Court knows, the

18      government previously provided the videotapes that are case

19      specific to Ms. Bauer.  I think months ago -- we had a

20      reproduction just several months ago.  We are talking about,

21      approximately, a 45-minute period of time that is captured

22      on body-worn camera; all of that has been provided.  It's

23      also captured on CCTV; that has been provided.  The

24      government, given the circumstances, does not object -- and

25      I have talked to standby counsel about this -- if that gets

1    loaded onto a laptop, she can review that; they are

2    sensitive.

3             But my understanding, from the procedures at the

4    jail, is that if the laptop is loaded in a way, given the

5    conditions of confinement, she can't further distribute

6    it -- which is the gist of the problem; so I can't speak to

7    why she -- it had not been loaded on.  But my information is

8    the same as Your Honor's, which it's a relatively short wait

9    for those laptops given her specific situation.  I

10   understand that she would be permitted to take that laptop

11   back to her cell and view the discovery at her leisure.

12             THE COURT:  Yes.  So, Mr. Peterson, I know, you

13   know, this is your first appearance here; I am not blaming

14   you for this.

15             It is -- I feel like I have heard this from

16   different attorneys --

17             MR. PETERSON:  Right.

18             THE COURT:  -- you are now the second or third

19   attorney on this; and I don't know what to do.  But you have

20   asked me to incarcerate her -- "you," the United States.

21             You're telling me that you are providing for her

22   to have access, but she's saying she is not having access.

23   What do I do?

24             I mean, your office needs to figure out a way to

25   allow --

1      MR. PETERSON:  Right.

2      THE COURT:  -- an unrepresented defendant to view

3  discovery.

4      MR. PETERSON:  Correct.  Correct.

5      I will say this -- I do -- and I am not trying to

6  intrude on that relationship.  That information has been

7  provided to Ms. Bauer through standby counsel; and I

8  understand that their investigator has access to her.  So I

9  can't speak to why -- or perhaps they haven't gone down and

10  said:  Can you load this onto the laptop so she can watch

11  it, or:  I will sit down with you and go over, for 45

12  minutes, on the different body-worn camera -- and some of

13  the instances are minutes long, and show that to you.  I

14  can't speak to that.  But I believe that they have that

15  access to her to show her that in addition to the laptop.

16      I will -- after today, I will go back -- and,

17  again, I understand that tomorrow -- and this is not related

18  to the CCTV or the body-worn camera -- but I will have a

19  receipt tomorrow that that has been -- that e-discovery has

20  been provided to the jail where she is directly by the

21  special agent.  But I can follow up with that, and submit

22  something to the Court if you would like.

23      But some things -- for example, if it's incumbent

24  upon a third party, an investigator, to provide it to the

25  jail and say:  Here, we have had this for months.  She

1    didn't have it in her possession when she had access to it

2    when she was detained; but we have had this for months, here

3    is a thumb drive.  I provided that thumb drive months ago to

4    standby counsel; can you stick it on a thumb drive -- can

5    you stick it on to a hard drive where she has access to it?

6    I believe that that process can be done.  I don't know.  I

7    can't speak to that; maybe perhaps counsel can.

8              I apologize.  I am certainly not trying to be

9    difficult with the Court and I am trying not to --

10             THE COURT:  I know you are not; but I do think

11   this is a different situation than someone who is

12   represented --

13             MR. PETERSON:  Right.

14             THE COURT:  -- and where you have an attorney who

15   can be the primary screen for information here.  You need to

16   figure out a way for Ms. Bauer to view the evidence.

17             MR. PETERSON:  But let me ask it this way, and I

18   will invite input from both Ms. Bauer and standby counsel.

19             I take it there would not be an objection if the

20   government sends, and I can -- today or tomorrow I can

21   deliver -- I have delivered today a thumb drive which, I

22   think, is cumulative; I am trying to make sure that the

23   discovery obligations are absolutely satisfied.

24             If I dropped off a thumb drive to the

25   investigator, who hand delivers it for e-discovery today --

1    I take it there is certainly no objection to that, if

2    something has been previously provided; that way, at least I

3    know there is a mechanism I can say -- and I can provide a

4    receipt to Your Honor of sorts --

5            THE COURT:  I'm sorry.  You are saying

6    Ms. Hernandez's investigator?

7            MR. PETERSON:  No, no, no.  I would have it

8    delivered directly to the e-discovery at the jail for the

9    benefit of Ms. Bauer.  That has already been in place --

10   that will, I understand, be accomplished -- the third or

11   fourth step in that process will be accomplished tomorrow,

12   as it relates to Facebook; return the unscoped Facebook

13   return (sic), as well as the cell phone extraction from her

14   phone.

15           I can go through that same process for the

16   video -- the case-specific information for her, which has

17   been provided; it was provided months ago.  I can have that

18   delivered to the jail for her benefit.  I think that that

19   could have been done by counsel.

20           THE COURT:  I agree.  I mean, it seems like part

21   of the missing link here is her having access to laptops.

22           MR. PETERSON:  Right.

23           THE COURT:  She is not the first person who has

24   raised this concern; a gap between what you and I are

25   hearing in these reports, and what the inmates are actually

1    experiencing, in terms of their ability to get access to a

2    laptop.

3                MR. PETERSON:  Right.  I take those as two

4    separate issues.  I can -- I can facilitate the transmission

5    of the case-specific discovery, which I believe -- as I

6    provided to counsel today which is, again, cumulative.  This

7    is not necessarily a new production; there may be new

8    aspects of it, but just to make sure the discovery

9    obligations are complied with; it was something like

10   23.7 gigabytes, which is a lot of information.  But it's

11   certainly information that can be put on a thumb drive; it

12   can also be put on a hard drive.

13               I can facilitate that delivery to the jail for the

14   benefit of Ms. Bauer -- and, again, this is information

15   that's already been provided.  I don't know -- and I can

16   follow up with it, and have the U.S. Attorney's Office

17   follow up with it.

18               But, again, if you are talking about the jail

19   making it available -- my understanding is that it is

20   available.  I don't know about that disconnect.  As Your

21   Honor said, I believe that the wait list is not that long.

22               I have been told that inmates have access to it;

23   and they can take a laptop loaded with information back to

24   their cell; and that universe of stuff, information and

25   evidence -- I believe that can be accomplished.

```
1              If you are talking about larger issues, in terms

2       of these global productions and accessing the internet, I do

3       believe that they have limited access to that as well; but I

4       can't necessarily speak to that.

5              Does the Court want me -- I am happy to follow up

6       in that fashion and deliver the case-specific information --

7       it's been provided multiple times to her, deliver it to the

8       jail -- have it delivered to the jail for her benefit under

9       their e-discovery procedures.  I am happy to --

10             THE COURT:  Yes.  I think that -- I would

11      certainly appreciate that; but, you know, anything your

12      office --

13             MR. PETERSON:  And I will endeavor to do more.

14             THE COURT:  -- anything your office can do to make

15      sure she's actually getting the laptop is --

16             MR. PETERSON:  Right.

17             THE COURT:  -- I think, strikes me as the

18      bigger --

19             MR. PETERSON:  I can't speak to -- again, just so

20      that this record is clear, I believe it is possible for a

21      defense investigator, defense attorney, to say:  Deliver the

22      same e-discovery.  Saying:  Here.  At some point she's going

23      to wait for a laptop; she is going to want to get it.  Here

24      is some information -- here is several gigabytes of

25      information that can be loaded onto a hard drive.
```

1           So it doesn't necessarily require her -- I hear

2      and respond to her, Ms. Bauer, saying I saw one video.  I

3      believe that the defense or an investigator can say:  Here

4      is a thumb drive I got -- here is information I got from the

5      government; they don't object to the sensitive nature of

6      that -- and we have told her that because she's in a

7      confined setting and she can't redistribute it.  I don't

8      know that that's been attempted or tried -- and I don't know

9      why that can be done -- but I will endeavor, on the

10     government's behalf, to do that directly to her.

11              THE COURT:  All right.  Thank you, Mr. Peterson.

12              MR. PETERSON:  Thank you, Your Honor.

13              THE COURT:  So, Ms. Hernandez, you know, you keep

14     filing motions for release that are bordering on frivolous

15     at this point.  I will tell you, ma'am, I am getting

16     concerned about me continuing to pay bills for you to file

17     things that, you know, I have already considered.

18              I would -- I do think you and your investigator

19     can do a lot to help ensure she actually can review these;

20     and I am not sure why that's not happening.

21              MS. HERNANDEZ:  So my investigator has gone to the

22     jail and provided to Ms. Bauer and reviewed with her, I

23     believe --

24              THE COURT:  One video?

25              MS. HERNANDEZ:  The video -- the original

1    discovery in this case involved -- which I believe is the

2    45 minutes the government describes -- is a video merely of

3    select portions of what happened on January 6th that

4    directly show her in the -- in the Capitol allegedly

5    between, I believe, 2:47 in the afternoon to 3-something --

6            THE COURT:  Okay.  So what can you do to help make

7    Ms. Bauer get ready for trial?

8            MS. HERNANDEZ:  So if the Court will just let me

9    explain the rest of the discovery that has not been viewed

10   by Ms. Bauer.

11           There are thousands of hours, as the government

12   has informed the Court, of discovery which she wants to look

13   at, of things that happened outside the Capitol because --

14   as the government alleges in some of the pleadings before

15   the Court, they allege that she forced her way into the

16   Capitol.  That -- you know, so the video that she has seen

17   is a very concise amount of video after she is in.

18           It does not -- there are thousands of hours of

19   video outside the Capitol by -- before she enters the

20   Capitol; what she saw; whether she forced her way through

21   barricades -- or whatever other information the government

22   is producing and continues to produce as they have in this

23   case and in other cases; it's what they refer to as the

24   "global discovery."

25           THE COURT:  Right.  I understand that.

1              MS. HERNANDEZ:  She has not seen any of that.

2              THE COURT:  Why not?

3              MS. HERNANDEZ:  Well, for one we were wait- -- I

4     did not produce it to the jail.  My investigator -- it was

5     loaded onto evidence.com by the government; that was just

6     made available recently.  And, in fact, the past week the

7     evidence.com platform was taken down, and I think it just

8     went back up yesterday; so that she has not seen.  Those are

9     thousands of hours.

10             But I would submit to the Court, even if my

11    investigator sat at the jail eight hours a day or ten hours

12    a day for the next X number of days -- which I will tell the

13    Court he can't because he handles other cases, as do I --

14    that she has not seen.

15             THE COURT:  Right.  But there's got to be

16    something between one hour and thousands of hours that you

17    can provide to her.

18             MS. HERNANDEZ:  Correct, and we're trying to get

19    that done for this purpose.

20             The evidence.com platform requires online access;

21    we don't have online access.  "We," I mean, the defense

22    don't have online access when we enter the courtroom (sic),

23    so it has to be downloaded by the investigator onto a hard

24    drive or something.  It's not an easy process.  I have my

25    paralegal downloading all of these materials so that they

1    can be made assessable to her.  So if the government can

2    produce that on an external hard drive instead of on the

3    evidence.com because -- then that would facilitate the

4    procedure.

5           So we have reviewed with her the very specific

6    narrow discovery of her -- what was inside the Capitol; she

7    wants to see all of the other stuff.  Just this past week,

8    the government produced to me -- as they told the Court --

9    and they indicated that they were hand-delivering to the

10   jail a flash drive with everything on her -- unscoped from

11   her Facebook page and from her cell -- cell phone; that is

12   not yet at the -- that was delivered to me last Thursday,

13   and that is not yet -- has not yet been delivered to the

14   jail by the government.

15          I emailed the jail yesterday to find out about the

16   status of her laptop; I was told it would take four to six

17   weeks -- it would take four to six weeks from the time they

18   received the electronic discovery; and they did not have any

19   electronic discovery in connection with Ms. Bauer yesterday.

20   So it takes four to six -- so if the government delivers the

21   flash drive with the phone information to the jail tomorrow

22   or this week, what the director of communications --

23   whatever the title is -- tells me that it takes four to six

24   weeks before she has access to a laptop.

25          THE COURT:  But you can also go in, like,

1    tomorrow -- or your investigator can -- and show her things,

2    correct?

3            MS. HERNANDEZ:  Yes, if he's available.  This is

4    Christmas week; I don't believe he is available, but --

5            THE COURT:  Well, tomorrow was --

6            MS. HERNANDEZ:  -- I understand.

7            THE COURT:  -- as an example.

8            MS. HERNANDEZ:  I understand the Court is not

9    asking me at this moment.

10           Correct.  So yes.  Yes.  My investigator has been

11   doing that as time --

12           THE COURT:  Once.

13           MS. HERNANDEZ:  No, I believe he has gone to visit

14   her more than once.  Multiple -- he's gone to visit her more

15   than once.

16           THE COURT:  Okay.

17           MS. HERNANDEZ:  What he has reviewed with her,

18   however, is only that narrow evidence -- bit of evidence

19   about which the government produced a long time ago which,

20   in fact, I copied onto a flash drive and sent to her home

21   early on in the case because that was the first discovery

22   that was produced; that she's had access to.

23           THE COURT:  Okay.

24           MS. HERNANDEZ:  It's the global discovery and the

25   thousands of other pages.  For example, the government

1       produced a number of pages relating to investigations of

2       individual Capitol police officers.  There was a dispute as

3       to how that was highly sensitive; there were names on there.

4       We were not allowed to even show her that because, you know,

5       they left some names on -- the specific names of the

6       officers, and they didn't want that out.  Anyway, that is

7       what she has seen.

8               But what I am -- what I understand, not just

9       from -- well, from Ms. Bauer is that if Ms. Bauer wants

10      to -- this is not an easy process.  The government has,

11      according to this document, has 27 lap- -- the jail as 27

12      laptops; and that information about 27 total laptops comes

13      from a filing by the government in November of this year, in

14      front of Judge Mehta in the Oath Keepers conspiracy; so that

15      is the most recent information that we have.  Twenty-seven

16      total laptops available for every defendant, not just

17      January 6 defendants but, you know, local cases.

18              THE COURT:  I understand.

19              MS. HERNANDEZ:  So we're not talking about a lot

20      of laptops.  I know in the past, before January 6th

21      happened, I had a lot of complaints from clients about how

22      the laptops, you know, don't -- they run out of juice, and

23      all of these other problems with them.  It's not -- it's not

24      as easy as it might appear.  I am not saying that the jail

25      is not trying, I believe they are; but it is what it is.

1      Beyond that, just the number -- the extent of the
2  discovery is such that even if she had access to a laptop --
3  and as you see, their procedure is you get it for two weeks;
4  then we take it back and somebody else gets it.
5      THE COURT:  Right.  But it sounds like she hasn't
6  had one for two weeks.
7      You know, Ms. Hernandez, filing a motion this
8  morning saying she can't get access to discovery, therefore
9  she should be let out of jail -- that's not very helpful.
10 That's a preposterous suggestion, that somebody who --
11 anybody who is locked up can just say that they're -- decide
12 to go pro se say:  I don't have access to discovery and,
13 therefore, you need to let me go.
14     What I would really appreciate from you is, kind
15 of, your help in getting Ms. Bauer ready for trial by
16 working with the jail to make sure she is getting a laptop
17 by having your investigator physically provide her the most
18 pertinent information; I mean, that's what I need from you.
19     MS. HERNANDEZ:  Correct.  Your Honor, I just want
20 the Court to understand, number one, we're still getting
21 discovery; number two, the discovery that we have --
22     THE COURT:  Well, let's not wait until you have it
23 all.
24     MS. HERNANDEZ:  I understand.
25     But evidence.com was supposed to make it possible,

1    in some ways, to search, you know --

2             THE COURT:  I get it.  Hopefully, it's going to

3    get easier --

4             MS. HERNANDEZ:  -- so we don't have to look --

5    but, as I said, I believe that was up for a week before it

6    came down.  And, Mr. Kramer -- I believe it was last

7    night -- that he sent an email saying it's back up.

8             THE COURT:  Okay.

9             MS. HERNANDEZ:  So it's a process of -- I

10   personally have not been on evidence.com.  I haven't figured

11   out how to -- I have a license; my investigator has a

12   license, but I haven't figured out how to get on; I am just

13   telling the Court.

14            My investigator I know has been on evidence.com.

15   The problem is from hundreds -- I don't know -- whether they

16   say thousands of hours of video to locate the video that is

17   pertinent is not an easy process.  And as I say, it has to

18   be downloaded onto -- evidence.com works off the internet.

19   We don't have access to the internet when we're inside the

20   Capitol -- inside the jail.

21            So there are multiple processes from when the

22   government has it in its possession, produces it to USAfx;

23   we get access to it, produce it on evidence.com.  It is an

24   ongoing process.  It's not my only case, and it's not my

25   investigator's only case.

1              We are trying -- the defense bar is trying

2      desperately to get this information for the cases that I

3      represent defendants, and for Ms. Bauer.

4              In addition, I am not 100 percent certain, she has

5      access to some -- I think it's fast case is the program that

6      the quote-unquote law library that the jail provides.  I

7      don't -- she has indicated to me that there are things on

8      there that she would like to read or that are not

9      accessible; I don't know the whole -- I am trying to find

10     out exactly what is or is not available to the Court (sic).

11             With respect to whether the problems with

12     discovery can be the basis for release, Your Honor, that's

13     what 3182(i) provides.  And it would not be fair to say,

14     well, the reason Ms. Bauer is self-representing is because

15     she wants to get out of jail.  She indicated she wanted to

16     self-represent long before she was in jail.

17             THE COURT:  I understand that.

18             MS. HERNANDEZ:  So I don't -- I hope the Court

19     doesn't think she wants to self-represent so she can have an

20     excuse to be released.

21             THE COURT:  No, no.  But she's -- I mean, you are

22     wrong to think she is in a different situation.  I have

23     another defendant who is -- January 6th defendant who is

24     self-represented at the jail; I am sure other defendants --

25     other judges do.  So we can make this work; we need to make

1     this work.

2                 I am going to ask both attorneys to try to make

3     sure that Ms. Bauer is getting access to a laptop at the

4     jail so that she can start reviewing some of the discovery.

5                 MS. HERNANDEZ:  Right.  Your Honor, with respect

6     to the unique situation, I just think Ms. Bauer presents a

7     unique situation because of her personal background.

8                 THE COURT:  Okay.  I have reviewed --

9                 MS. HERNANDEZ:  Those are -- I know I have made

10    those arguments in the past --

11                THE COURT:  Okay.

12                MS. HERNANDEZ:  -- and I just believe the totality

13    of the circumstances make her unique.

14                If the government -- I will speak to the

15    government -- another thing, Your Honor, with respect to

16    plea negotiations, the last time we were before Your Honor,

17    the Court indicated or, sort of, opened the -- that we would

18    meet with Ms. Bauer in the marshals' lockup downstairs; we

19    were unable to do that.  The marshals were unable to

20    accommodate that.

21                I just want to let the Court know, I tried to set

22    up a video conference with Ms. Bauer and the prosecutor;

23    that was unable to go forward.  I will tell the Court --

24                THE COURT:  Do you think it would be useful to try

25    again today, for the three of you to chat?

```
 1              MS. HERNANDEZ:  Well, I don't know if the
 2    government is willing to.
 3              My concern -- I will tell the Court my concern.  I
 4    was hoping that the government would deem those
 5    conversations as plea negotiations that could not be used
 6    against her if the plea fell through.
 7              THE COURT:  All right.  I am going to leave that
 8    to you-all.
 9              MS. HERNANDEZ:  So we have not been able to
10    resolve that aspect of it; what happens if she -- so that's
11    been -- I just wanted to let the Court know that we have
12    tried.  But that has been a problem that we have been unable
13    to resolve whether -- as a self-representing defendant, if
14    she says something, can the government use it against her?
15    So that's just in the background.
16              We are trying to accomplish that.  If the Court
17    wants -- there is a plea on the table, but it's to a felony
18    plea.  I don't believe Ms. Bauer will accept that at this
19    point.
20              THE COURT:  All right.  So, I mean, it sounds to
21    me like it's probably premature to set a trial date.  I want
22    to hear from Ms. Bauer on this.
23              But, I guess, I am inclined for us to come back in
24    a few weeks and see if we have been able to get her a
25    laptop.  Does that make sense to you, Ms. Hernandez?
```

1          MS. HERNANDEZ:  I don't see how she can -- it's up

2    to her to decide; but I don't see how she can prepare for

3    trial in the situation that we are in now.  I believe that

4    to be correct, Your Honor.

5          THE COURT:  Ms. Bauer, does that make sense to

6    you?

7          THE DEFENDANT:  Yes.  There is no way that I can

8    be ready for a trial by February 28th.

9          I have not viewed any evidence against me.  I have

10   not viewed any of the evidence that I have asked for.

11         I really feel like the government is stonewalling

12   evidence under *Brady versus Maryland*.  And I just feel like

13   there should be video provided of who opened the doors in

14   the first place.

15         THE COURT:  Okay.  So I am going to suggest that

16   we reconvene at eleven o'clock on January 14th.

17         Mr. Peterson, does that work for you?

18         MR. PETERSON:  January 13, no --

19         THE COURT:  14.

20         MR. PETERSON:  No.  I apologize.  Next week,

21   that's the only week that I am physically not present in the

22   country.

23         THE COURT:  Okay.  How about 11 a.m. on

24   January 7th?  It's not a lot of time, but I mean --

25         MR. PETERSON:  11 a.m.?

```
 1                    THE COURT:  Yes.

 2                    MR. PETERSON:  Yes, I am available.

 3                    THE COURT:  All right.  Ms. Hernandez, does that

 4         work for you?

 5                    MS. HERNANDEZ:  Yes, Your Honor.

 6                    THE COURT:  All right.  So let's come back at

 7         11 a.m. on January 7th.  I am hoping to hear by that point

 8         that we have figured out a way to get Ms. Bauer a laptop.

 9                    Mr. Peterson, do you have a motion?

10                    MR. PETERSON:  Yes, Your Honor.

11                    The government would ask the Court in the interest

12         of justice, for the reasons previously stated on the record

13         and find -- for the Court to toll time under the Speedy

14         Trial Act in the interest of justice.

15                    THE COURT:  Okay.  And it looked like you wanted

16         to say something on the plea negotiation point.

17                    MR. PETERSON:  Yes.  Thank you, Your Honor.

18                    Again, I am happy to -- I realize that's a

19         delicate area but -- for obvious reasons, sometimes perhaps

20         necessary and delicate -- I just want to make it very clear

21         on the record that the government and counsel -- I don't

22         mean to disparage anything she said in any way, shape, or

23         form; but when you start talking in the passive voice, it

24         sometimes has an effect.

25                    The government was ready, willing, and able to sit
```

1    down and speak with her, so to speak -- Ms. Bauer, with

2    counsel, via video linkup with an agent -- so we set aside

3    time; and we were available for that.  And that was not the

4    reason --

5              THE COURT:  Do you think it would be useful for

6    you-all to talk now?

7              MR. PETERSON:  No.  I mean, I would be happy -- if

8    the Court orders it, I will be happy to do it.  I will

9    say -- just say very bluntly what the government's concerns

10   are is -- I would like to have an agent present, if we're

11   going to have that conversation; I would propose that.

12             I think some of the -- which I understand this as

13   well; some of the hurdles, if you will, that Ms. Hernandez

14   raised -- understandable hurdles -- is, I think, she

15   wants -- she wants the government to offer her a special

16   status in having that conversation.  And I don't think the

17   government is capable of doing that, meaning -- giving her

18   some form of immunity just to have that conversation.  We

19   can't promise that; I can't get approval for that.

20             THE COURT:  I understand.

21             MR. PETERSON:  But I am happy to be available to

22   have a conversation as I would with any counsel.  I think

23   that that's something that's important for us, to be

24   available -- and we are available for that.

25             I apologize if I am --

1           THE COURT:  No.  I am not going to tell you -- I

2    just wanted to see if there is something I can facilitate,

3    but I am certainly not going to order --

4           MR. PETERSON:  I just did not want the Court to be

5    under the misimpression that somehow the government was part

6    of the reason that a meeting could not take place.

7           THE COURT:  I understand, okay.

8           MR. PETERSON:  We are ready, willing, and able to

9    have a sit-down conversation if Ms. Bauer wants to have

10   that.

11          THE COURT:  All right.  Ms. Bauer, the government

12   is asking that the time under the speedy trial clock be

13   tolled until January 7th.

14          Do you have a position on that?

15          THE DEFENDANT:  Do I have a choice?

16          THE COURT:  No.  I get to make the choice, but you

17   can tell me what you think I should do.

18          THE DEFENDANT:  Your Honor, I am willing to take

19   an ankle bracelet.  I have no previous history of

20   criminal --

21          THE COURT:  Ma'am, that's not what we're talking

22   about right now.

23          The question is whether you are willing to --

24          THE DEFENDANT:  But I feel like I am not getting

25   due process of the law.  They say that all these things are

1    happening; but in that jail none of this is happening.

2              THE COURT:  I understand your concern.  And that's

3    why we're going to come back in about two weeks, I want to

4    make sure that we're getting --

5              THE DEFENDANT:  That is Christmas without

6    families.

7              THE COURT:  There are -- ma'am, you are a victim

8    of the choices that you have made.

9              All right.  I am going to toll the speedy trial

10   clock until January 7th; I find that there is ongoing

11   discovery.  There is also an issue here with the -- I want

12   to make sure that the defendant has access to a laptop.

13   And, frankly, I am hearing that she does have access, but

14   she's saying that she can't get access; so I want to try to

15   get to the bottom of that.

16             But, I think, in the meantime it does make sense

17   to toll the speedy trial clock.  She says she can't be ready

18   for a trial in any event; and I understand that concern.  I

19   find that the interests of justice outweigh the interests of

20   the public and the defendant in a speedy trial to the extent

21   that we're tolling until January 7th.

22             Ms. Hernandez.

23             MS. HERNANDEZ:  Your Honor, two things.

24             Ms. Bauer has two motions that she wanted to file;

25   I can either pass them up to the Court -- these are motions

 1    that she prepared; or I can scan them and file them on

 2    ECF for the Court.

 3              THE COURT:  Please.  If you can do that, I'd

 4    appreciate it.

 5              MS. HERNANDEZ:  Scan them and file them on ECF?

 6              THE COURT:  Yes, ma'am.

 7              MS. HERNANDEZ:  Yes, sir.

 8              THE COURT:  Thank you.

 9              MS. HERNANDEZ:  Your Honor, just one last point

10    with respect to the discussions about plea negotiations.  I

11    wanted to stay away from it; but just to be clear,

12    Rule 11 and Federal Rule of Evidence 410 both provide --

13              THE COURT:  Okay.  That's between you-all.

14              I am certainly not going to order either side to

15    engage in plea negotiations; that's up to you-all, yeah.

16              I am not faulting you for not wanting to have the

17    conversation without certain parameters.  I just wanted to

18    see if you-all did want to -- I wanted to do what I could

19    with the marshals to make that possible.

20              MS. HERNANDEZ:  I understand.

21              THE COURT:  All right.  I will see you-all in a

22    couple of weeks.

23              MS. HERNANDEZ:  Thank you, Your Honor.

24              (Whereupon, the proceeding concludes, 10:44 a.m.)

25                          *  *  *  *  *

<div align="center"><b><u>CERTIFICATE</u></b></div>

1

2

3          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

4    certify that the foregoing constitutes a true and accurate

5    transcript of my stenographic notes, and is a full, true,

6    and complete transcript of the proceedings to the best of my

7    ability.

8

9          This certificate shall be considered null and void

10   if the transcript is disassembled and/or photocopied in any

11   manner by any party without authorization of the signatory

12   below.

13

14

15   Dated this 5th day of December, 2021.

16   /s/ Elizabeth Saint-Loth, RPR, FCRR
     Official Court Reporter

17

18

19

20

21

22

23

24

25