By: Pauline; Bauer:

EXECUTOR

PAULINE BAUER - VESSEL

Leave to file GRANTED

TREVOR N. MCFADDEN
United States District Judge   2/18/22

**UNITED STATES OF AMERICA**

**Vs.**                                    **Case # 21-cr-00386-TNM-2**

**PAULINE BAUER**

**MOTION TO DISMISS FELONY CHARGE §18 U.S.C. 1512(c)(2)**

The Defendant Pauline Bauer, hereby files this motion to dismiss felony charge *§18 U.S.C. 1512(c)(2)*.

First, the fact that the Congress was not in a joint session at the time of the breach and that a recess had been called. Second, the defendant raises the constitutionality of the charges, the multiplicity of the charges, vindictive prosecution, and selective prosecution.

The Government argues that the Defendant "*corruptly*" forced her way into the Capitol on January 6, 2021. The Defendant arrived at the East side of the Capitol approximately at 1:00pm to listen to a speech by a Pennsylvanian Senator. The Defendant is unaware of how the fences came down,

but there is a video of the Capitol Police removing the barriers. Many in the crowd were hesitant to move forward toward the steps.

The prosecution argues that "the Defendant acting with consciousness or wrongdoing, and intent to obstruct, impede, or interfere with a statutorily defined *official proceeding*."

In the statute 18USC1505 the word "*corruptly*" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

Again, the Defendant did not travel to Washington DC on January 6, 2021 to corruptly attempt to do anything, but let the Congress know that the people needed to be heard. The Government accuses the Defendant of organizing bus trips that the Defendant did not do as only 2 persons went and 13 were interested. The Government argues that the Defendant could have contacted the Congress and the Senators to put pressure on them to investigate the 2020 election. The people already attempted by calling, emailing, and attending rallies, as well as signing petitions, speaking out against draconian lockdowns. Many took to the polls as poll watchers, and witnessed voter fraud. Pennsylvania adopted Act 77, which violated the State Constitution. The people had exhausted all means of petitioning the Government.

*YouTube video Main Columbus Doors 1-45 - 4-00 pm 34 video sync.mp4 see exhibits 1-8*

the doors, with only a few officers present.  The video *0686 USCH 02 Interior doors* shows the windows broken before the crowd entered, but the prosecution has yet to provide the Defendant with the evidence of how these doors got open and the windows being broken, as well as how the

brass doors were opened. The CCTV video shows the capitol police leaving the doors as people from the inside show up to open the doors.  The prosecution is stating that an angry mob entered from the Senate Wing doors at 2:13pm, but has yet to provide the evidence of how the people entered. The Government alleges that the angry mob entered at 2:13pm and then again, a half hour later at 2:43pm. The defendant argues that with the limited amount of security present, the police would not have been able to hold off an angry mob of people for over a half hour. The timing of all three areas being breached at the same time makes one wonder if this was more than co-incidental. One would have to wonder and maybe the Speaker of the House should take responsibility for not accepting the 10,000 National Guards men that President Trump offered. It is complete disgrace that a crowd of unarmed individuals could breach one of the most secure buildings in the United States without much force. What would they do if they were attacked by armed terrorists?

The word "proceeding is followed by the preposition "before". The "proceeding" must be "before" a judge, court, or grand jury, "before" the Congress of the United States, "before" a federal agency conducting a matter "authorized by lay, or "before" an insurance regulator or examiner. That structure provides two insights into the meaning of "official proceeding". First, it indicates that the actions or events that constitute the "proceedings" at issue must comprise part of the official business of the enumerated body. The fact that the defined term contains the adjective "official" merely reinforces this conclusion 18 U.S.C. 1512(c) + 1515(a)(1). Second, the phrase "proceeding before" suggests that the body has convened in some formal respect for the purpose of conducting that business. The Court, accordingly, concludes that "a proceeding before Congress" requires more that "an action or series of actions" and that not every event occurring within the walls of

Congress constitutes an "official proceeding". The proceeding "must involve a formal assembly or meeting of Congress for the purpose of conducting official business. This interpretation accords with commonly accepted legal definitions of the word "proceeding" which defines the word to mean among other "[t]he business conducted by an official body.", Proceeding, Black's law dictionary (11th ed. 2019) United States v. Montgomery (D. D.C. 2021). The defendants in this case argue strongly but failed to state the fact that in order for the Congress to conduct an "official proceeding", they must be in a "joint session". A debate before separate Houses would not be an "official proceeding". At 12:30:37 the Senate met in the Senate Chamber. The prosecution argues that the Defendant interrupted an "*official proceeding*" of the joint session of the Congress. The joint session met in the House of Representatives where at 13:07 the Vice-President addressed the gentleman from Virginia: "Under Title 3 of the United States Code a debate is not permitted in the joint session." At 13:07:27, the gentleman from Virginia says: "The parliamentary enquiry Mr.

Vice-President. I am not attempting to debate. I'm trying to find out how a parliamentary inquiry

or parliamentary point of order would be made following with the Speaker's request that most of

us not be on the floor, how do you make one of those points of order, when you don't know what's

going to happen later?" Mike Pence states: "The gentleman's parliamentary inquiry constitutes

debate which is not permitted in the joint session under Section 18 of Title 3 United States Code."

At 13:14:17, the Congress and the Senate ended the joint session and retired to separate Chambers

to debate the counting of electors for the State of Arizona. A debate does not constitute an "official

proceeding". The word "*debate*" is not found in any law dictionary. If the prosecution wants to

argue that a "*debate*" in terms of the Webster's dictionary means a "*formal argument*", which is

not an "official proceeding."

The Court must also decide on the nexus of the precise timing. At 14:13:37, (see exhibit 11-12) the Vice-President announced: "We will stand in recess until the Call of the Chair." From the evidence that the Defendant has reviewed, there is no forced entry and the Capitol is absent of any so-called "rioters" as of 14:13:37, unless the Government has evidence that they seem to be "stonewalling" from the Defendants. In any investigation, the initial breach would be the first evidence to be released. According to the Isocam footage, the senate is cleared at 14:33:21 (see exhibit 13) the first people to walk through the Senate doors (without force) into the Senate Chamber was at 14:44:38 (see exhibit 14-34). If there was an angry mob that forced the Senate to evacuate, why would it take over 30 minutes to reach the Senate floor? The doors were not locked nor were they broken into. The Government also alleged that the Vice President was in the Capitol, but the defendant has a picture from the senate floor that proves he was not in the senate at 14:14 which, would also suggest that the secret service was not present either.  The Government also alleges that Kamala Harris was present in the capitol, which she was not. (see exhibit 12)

The Government argues at the constitutionality of the statute, but the Government needs to be reminded that there are Supreme Laws that serve as the preamble to United States Code: The Declaration of Independence, the Articles of Confederation, the Northwest Ordinance, and the 1787 Constitution for America.

. "We hold these truths to be self-evident that all Men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are Life, Liberty, and the Pursuit of Happiness – That to secure these Rights, Governments are instituted among Men, deriving their just Powers from the Consent of the Governed, that whenever any Form of Government becomes

destructive of these Ends, it is the Right of the People to alter or to abolish it, and to institute new Government laying its Foundation on such principles, and organizing its Powers in such Form, as to them shall seem most likely to effect their Safety and Happiness. Prudence, indeed, will dictate that Governments long established should not be changed for light and transient Causes; and accordingly all Experience hath shewn, that Mankind are more disposed to suffer, while Evils are sufferable, than to right themselves by abolishing the Forms to which they are accustomed. But when a long Train of Abuses and Usurpations, pursuing invariably the same Object, evinces a Design to reduce them under absolute Despotism, it is their Right, it is their Duty, to throw off such Government, and to provide new Guards for their future Security."

A fundamental right under the constitution is an individual right that is given the highest levels of judicial protections from interference by Legislation or executive action. A fundamental right may not be burdened or abridged by a law or actions by government officials unless the law or action is in furtherance of a compelling governmental interest that is pursued by the means narrowly tailored to least burden of that fundamental right. [T]hose rights that are "deeply rooted in this Nation's history and tradition." Moore vs. City of East Cleveland, 431 U.S. 494,503 (1977) (Powell, J) "This court like all article III courts is one of limited jurisdiction, we cannot decide cases that we lack Constitutional authority to decide." Wyoming Outdoor Council vs. U.S. Forest Service 165 F 3d 43,47 (DC Cir. 1999) "We are empowered to hear only cases or controversies U.S. Constitution Art. III Section 2. We ascertain whether or not the matter before us is a "case" or a "controversy" by looking to page 1157 whether Inter Alia the litigants here standing Wyoming Outdoor Council 165 F.3d at 48. The "irreducible Constitutional minimum of standing contains three elements:

(1) The Plaintiff must have suffered injury in fact, an actual or imminent invasion of a legally protected concrete and particularized interest;

(2) There must be a causal connection between the alleged injury and the defendant's conduct at issue, and

(3) It must be likely not speculative that the Court can redress the injury.

Constitutional right – A right protected under the Constitution, Constitutional right may be the most important contemporary sense of right. Although the courts are careful to base all Federal Constitutional Rights on the U.S. Constitution as enacted in 1787 and as amended, by tradition, certain ideas regarding those rights and understood to have arisen from the period of the Framing, reaching back to the Declaration of Independence.

Constitutional rights take four major forms.

First is liberty, or negative rights, the constitutionally protected ability to engage in certain conduct or to hold certain status and in doing so to be protected from interference by police or other agents of the government, unless that interference is very well justified.

Second is a privilege, or positive right, the constitutionally protected ability to call upon agents of the government to assist in performing certain conduct or to hold certain status and in doing so to be protected from interference by other government agents and by private parties as well as, in some instances, to be provided resources. The rights to habeas corpus and, where it is a right, to education.

Third is a procedural right, the constitutional requirement enforceable by the citizen in certain ways, according to certain rules, and in consultation and agreement with one another. The rights to laws made according to specified procedures, to trial by jury, end to be free from torture.

Fundamental to all these rights is a constitutional right in each individual that the agents of the government will abide by the Constitution and do nothing through the power of state that is not allowed to them to do by the Constitution. The right not to be taxed for unlawful purpose is an example.

A civil right implies a greater emphasis on the idea that the right is inherent in a person's being or in the person's citizenship. Thus, a suspension of the Constitution cannot limit a civil right that exists before and will exist after a Constitution. The structure of the U.S. Constitution and its Bill of Rights suggests that the framers of these instruments applied ideas in balancing these differences in emphasis in this way; the rights they considered in the Constitution were inherent in each person, existed before the Constitution, rather than being conferred there, but the Constitution creates obligations on all officials whose offices are derived from, or limited by the Constitution, and the Constitution added obligations upon them to respect and enforce these rights.

The Statute 18USC1512(c)(2) has a legislative history that must be examined by the courts to determine its Constitutionality pertaining to its creation. "Legislative history is the textual, Political, and archival record of a statute or bill as it moves from idea to draft a bill then through the process of introduction or sponsorship, committee review, debate, amendment, voting passage to the other chamber for a similar process reconciliation if needed executive treatment and if needed legislative response." Journal entry- A recording of a legislative action. A journal entry (in

the context of legislative record) is the recording of a vote transmittal, report, or other action related to a particular legislative body or to a given piece of legislation. Journal entries are often the primary source of official legislative history. Bouvier Law dictionary.

"Generally, the courts have no power to require alteration or publication of an entry in a legislative journal, owing the limits of Separation of Powers." Hoover Vs. Bd. Of County Commis. 482 N. Ed. 2d 575,579 (Ohio 1985)

As defined in the Bouvier Law Dictionary (2012 Edition):

The defendant also argues that never in Judicial history has this statute been used to prosecute anyone who entered the capitol rotunda when there actually was an official proceeding in front of a Judicial hearing. Look to the Kavanaugh hearings or the Iran Contra hearings. During a Congressional assembly to vote on providing $100 million in military aid to Contra Rebels in Nicaragua, eighteen appellants were charged with unlawfully demonstrating with the United States Capitol building, in violation of D.C. Code 9-112(b)(7) (1989) D.C. Code 9-112(b)(5) (1989) D.C. code 22-3102(1989) Berg v US, 631 A. 2d 394 (D.C. 1993). They urged the courts to follow Wheelock v. United States,552 A. 2d 503 (D.C. 1988)" in which the court reversed the convictions of a group of fifty persons who had participated in a demonstration in the Capitol Rotunda." [631 A. 2d 398] " which is at the very heart of the United States Capitol Building, is a "unique situs for demonstration activity" and "a place traditionally open to the public...to which access cannot be denied broadly or absolutely..." Wheelock supra 552 A. 2d at 506 " A policy which results in the closing of the Rotunda when people exercise rights protected by the First Amendment, but in the Rotunda remaining open when such rights are not being exercised, penalizes and chills

constitutionally protected activity..."  During the Iran Contra hearings, appellants used a large

banner that read "ask about cocaine smuggling" they were charged with 9-112(b)(4) (1989) 9-

112(b)(7) (1989). Bardoff v. US, 628 A. 2d 86 (D.C.1993) Abney v. US, 616 A.2d 856(D.C. 1992)

"Under D.C. Code section 22-3102 (1989) a person who enters on public or private property

without lawful authority or who refuses to leave on demand of one lawfully in charge of that

property may be convicted of unlawful entry. This court has held that when public property is

involved, in order "to protect the unlawful entry statute from unconstitutional vagueness and to

protect First Amendment rights, ... the government must prove not only that a person lawfully in

charge of public premises has ordered the defendant to leave but that there is some additional

specific factor establishing the party's lack of a legal right to remain." quoting Wheelock  There

are numerous videos of the capitol police taking down the fences and waving people in and also

backing up and letting people move forward to the middle of the steps on the east side of the

capitol.  The doors were open and the defendant entered through an open door.  The defendant did

not hear the DC police tell people to leave.  In the body cam video there are police pushing other

officers into people and there are people pushing others into the officers.  The guy with the flag

pushes a man in a carhart jacket into the police and the other guy who was telling people to go to

the next entrance, also pushes Daniel Gray into the police.  The CCTV Video shows there are

certain individuals who are pushing and shoving the police and vice versa. (see exhibits 35-38)

The crowd was peaceful and sang the National Anthem prior to entering. The defendant is

extremely embarrassed for screaming and swearing for 1-1/2 minutes and wishes she would have

been more observant to this being a complete setup. She got caught up in the crowd was maced

and was upset.  The defendant should not have lost her temper, but she did not hurt anyone or

damage anything. The defendant would also like to know if it is customary for the capitol to have

plywood attached to the UWT entrance or was this installed so that people could hang from it (see

exhibit35-37)

KOWITZ V. U.S. 598 A. 2d398 (D.C. 1991). "this

court has recognized and adopted the Supreme Court's classification of types of government

property for purposes of first Amendment analysis." Pearson v. United States, 581 A. 2d 347, 349,

351-352 (D.C. 1990). " The consideration of such classifications, commonly referred to as "forum

analysis", is employed by the court to weigh the government's interest in limiting the use of its

property against the competing interests of those who wish to use the property to conduct

expressive activity." Cornelius v NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 800, 105

S. Ct. 3439, 3447, 87L.Ed. 567 (1985). "The first category, traditional public forums include

property that has a "long tradition of devotion to assembly and debate" Pearson supra, 581 A. 2D

at 351. On such property, "the rights of the government to restrict expressive activity are very

limited." Id. If a "government regulation discriminates among speech-related activities in a public

forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve

substantial state interests, and the justifications offered for any distinctions it draws must be

carefully scrutinized." Carey v Brown, 447 U. S. 455,461-62,100 S. Ct. 2286,2290-91, 65 L. Ed.

263 (1980) "The second category includes what are referred to as designated public forums,

encompassing public property that is not a public forum by tradition but that the state has

designated for public use usually for limited expressive activity." Pearson Supra, 581 A. at 351.

Ashwander Vs. Tenn. Valley Auth. 297 U.S. 288 347-348 (1936) (Branders J.) concurred.

Bauers v. Heisel 361 F.2d 581 (3rd Cir. 1966) [361 F.2d 587]

"First it is well settled that a statute should not be considered in derogation of the Common Law unless it expressly so states or the result is imperatively required from the nature of the enactment."

"His concluding remarks – that the statute there being construed could not be read as impliedly abrogating judicial immunity are peculiarly applicable here. Ought such a sacred principle of the Common Law*** be subverted without an express declaration to that effect?" [361 F.2d 585]

"Did Congress by general language of its 1871 Statute mean to overturn the tradition of legislative freedom achieved in England by Civil War and carefully preserved the formation of State and Natural Gov'ts here?" 34 U.S. at 376 71 S.Ct. at 788.

*** "We cannot believe that Congress – itself a staunch advocate of legislative freedom – would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language before us." Ibid Tenney v. Brandhove 341 U.S. 367 21 S.Ct. 783 95 L Ed. 1019 (1951) Every person who, under the Color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" RS §1979 U.S.C.A 43.

Tenney v. Brandhove 341 U.S. 367 21 S.Ct. 783 95 L Ed. 1019 (1951), page 373

"Freedom of speech in action in the legislature was taken as a matter of course by those who severed the colonies from the Crown and founded our nation. It was deemed so essential for representatives of the people that it was written into the Articles of Confederation, and later into

the Constitution. Article V of the Articles of Confederation is quite close to the English Bill of Rights Freedom of Speech and debate in Congress shall not be impeached or questioned in any court or place out of Congress. Art. I Sect. 6 of the Constitution provides*** for any speech or debate in either House (the Senators and Representatives) shall not be questioned in any other place." Page 373

"The Maryland Declaration of Rights, Nov.3, 1776, provided: that freedom of speech, and debates or proceedings in the legislative ought not to be impeached in any other court or judicative, Art. VII. The Massachusetts Constitution of 1780 provided "The freedom of deliberation, speech, and debate, in either House of the Legislative, is so essential to the rights of the people, that it cannot be the foundation of any accusation or prosecution, action or complaint, in any court or place whatsoever." Part 1 Art. XXI

Chief Justice Parsons gave the following gloss to this provision in Coffin vs Coffin, 1808, 4 mass. 127: "These privileges are thus securely not with the intention protecting the members against prosecutions, for their own benefit, but to support the rights of the people, by enabling their representatives to execute their functions. Page 377

"this court has not hesitated to sustain the rights of private individuals when it found out Congress was acting outside its legislative role." Kilbourn vs Thompson, 103 U.S. 168 26 L Ed. 377"

Page 381

"It does not seem inappropriate to point out that it is the right of every person in this country to have his say, however unorthodox or unpopular his opinions maybe, is guaranteed by the same

constitutional amendment that protects the free press. Those who cherish freedom of the press here would do well to remember that this freedom cannot long survive the legislative stuffing art of freedom to believe and freedom to speak." Mr. Justice DOUGLAS Page 382

"It is speech and debate in the legislative department, which out constitutional scheme makes privileged, included of course, are the actions of legislative committees that are authorized to conduct hearings or make investigations so as to lay the foundation for legislative action. But we are apparently holding today that actions of those committees have no limits in the eyes of the law. May they depart with impunity from their legislative functions, sit as kangaroo courts, and try men for their loyalty and their political beliefs? May they substitute trial before committees for trial before juries? May they sit as a board of censors over industry, prepare their blacklists of citizens, and issue pronouncements as devastating as any bill of attainder." Page 383

"That result is the necessary consequence of our ruling since the test of the statute, so far as material here, is whether a constitutional right has been impaired, not whether the domain of the committee was traditional. It is one thing to give great leeway to the legislative right of speech, debate, and investigation. But when a committee perverts its power, brings down on an individual, the whole weight of the government for an illegal or corrupt purpose, the reason for the immunity exists. It was indeed the purpose of this civil rights legislation to secure federal rights against invasion by officers and agents of the States." 8 U.S.C 47(3) 8 U.S.C.A. 47(3)

See Jefferson notes on the State of Virginia (3rd Am. Ed. 1801) 174-175 a letter from Jefferson to Madison, March 15, 1789: "The tyranny of the legislatures is the most formidable dread at present, and will be for long years."

Barsky vs. United States 167 F.2d 241, 83 U.S. App. D.C. 127 (D.C. Cir. 1948) 147 F.2d 245

"The basic concept of the American System, both historically and philosophically, is that the government is an instrumentality created by the people, who alone are the original possessors of rights and who alone have the power to create government."

"The prime function of government, in the American concept, is to preserve and protect the rights of the people. The Congress is part of the government thus established for this purpose."

Edgerton, Associate Justice

"In my opinion, the House committee's investigation abridges freedom of speech and inflicts punishment without trial; and the statute the appellants are convicted of violating provides not ascertainable standard of guilt. It follows that the convictions should be reversed on constitutional grounds."167 F.2d 263

"A court might as well be asked to enforce a statute which in terms merely penalized and punished all acts detrimental to the public interest*** So vague and indeterminate are the boundaries thus set to the freedom of speech*** that the law necessarily violates the guarantees of liberty."

Sinclair v. United States 279 U.S. 263, 296, 298

"It does not follow as the government suggest, that pertinence which cannot be determined by any ascertainable standard will do. On the contrary, in the recent Musser case, quoted above, the Court declared that reasonable standards are necessary not only "to give adequate guidance to those who would be law-abiding" but also "to guide courts in trying those who are accused."

Screws v. United States, 325 U.S. 91 65 S.Ct. 1031, 89 L Ed. 1495 162 A.R.1330 (1945) Page 96

"But even so the Act would incorporate by reference a large body of changing and uncertain law. That law is not always reducible to specific rules, is expressible only in general terms, and turns many times on the facts of a particular case. Accordingly, it is argued that such a body of legal principles lacks the basic specificity necessary for criminal statutes under our system of government. "Page 104

"It is said however that this construction of the Act will not save it from the infirmity of vagueness since neither law enforcement official nor a trial judge can know with sufficient definiteness the range of rights that are constitutional. But that criticism is wide off the mark. For the specific intent required by the act is an intent to deprive a person of a right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them."

Cherokee Nation vs. Nash, 267 F.Supp.3d at 86 (D.DC 2017)

"Rule 56(a) mandates that the court shall grant summary judgement if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law."

O.A. v. Trump, 404 F.Supp.3d 109 (D.DC 2019) 404 F.Supp.3d 134:

"In a way that a social challenge to a regulation of general applicability does not." At 136:

"Under the line of authority, courts must presume that Congress does not intend to limit Jurisdiction if a finding of preclusion could foreclose all meaningful judicial review.

If the suit is wholly collateral to a statute's review provisions; and if the claims are outside the agency's expertise." 489-90 (quoting Thunder basin Coal Co. 510U.S at 212-13 At 140:

"There is no reason to believe that Congress intended to cede to the government the unique

capacity to shift fora at its whim." Page 141

Spokeo inc. v. Robins, 1365 Ct 1540

"To demonstrate Article III standing, a plaintiff must demonstrate a "concrete and particularized"

injury that is fairly traceable "to the defendant's conduct and that is likely to be redressed by a

favorable judicial decision." Page 144

"and the Supreme Court has "always conspicuously included the word "arguably" in the test to indicate that the benefit of the plaintiff test foreclose suit only when a plaintiff interests are so marginally related to or inconsistent with the purpose implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." Id. (quoting Clarke, 479 U.S. at 399 1075 Ct. 750)

Schooner / Charming Betsy Conon

Sharps vs. United States (D.DC 2021)

Jennings vs. Rodriguez 138 S.Ct. 830, 843 (2018)

"Constitutional avoidance is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts"

843 explaining that the doctrine of constitutional avoidance is pertinent when a court must choos[e]

between competing plausible interpretations of a statutory text but merely "[s]potting a

constitutional issue does not give a court authority to rewrite a statute as it pleases."

Fleming v. United States, 224 F.3d 213 (D.DC 2020)

"explaining that the rule of lenity is to be invoked only where the statutory language, structure,

purpose, and history leave the intent of the legislative in genuine doubt."

Lewis v. Casey, 578 U.S. 343, 355, 116 S.Ct. 2174, 135 Led 2d 606 (1996)

The defendant also argues on the multiplicity of the charges 18 USC 1512(c)(2), 1752(a)(2) and

40 USC 5104(e)(2)(d) are overlapping.  US vs. Giampietro 475f.Supp. 3d 779 (M.D. Tenn. 2020

at 788-790 Blockburger states that "where the same act or transaction constitutes a violation of

two distinct statutory provisions, the test to be applied to determine whether there are two offenses

or only one, is whether each provision requires proof a fact which the other does not." 284U.S.at

304, 52 s.ct.180.This is also known as "the same elements test", U.S. v Farah, 766 F.3d. 599,606

(6th Cir. 2014), because "the Blockburger test focuses on the proof necessary to prove the statutory

elements of each offense, rather than on the actual evidence to be presented at trial."  Illinois s.

Vitale, 447 U.S. 410, 416, 100 S. Ct. 2260, 65L. Ed. 2d 228 (1980)

The multiplicity of the three statutes 18USC1512(c)(2) and 1752(a)(2)and 40USC5104(e)(2)(d)

1752(a)(2)knowingly, and with the intent to impede or disrupt the orderly conduct of Government

business or official functions, engages in disorderly or disruptive conduct in, or within such

proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

18USC1512(c)(2) Whoever corruptly otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.

40USC5104(e)(2)(d) utter loud, threatening, or abusive language or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.   All three of these statutes use the word "impede"

The defendant argues Vindictive Prosecution as a due process violation under the Federal Constitutional standards

1) The exercise of a protected right

2) A prosecutorial stake in the exercise of that right.

3) Unreasonableness of the prosecutor's conduct

4) The intent to punish the defendant for exercise of a protected right.

"Presumably if the first three elements are present, that there is the required "realistic likelihood of vindictiveness, which the Government would have to rebut"

see Bragan v. Poindexter 249F 3d 476 481-82 (6th Cir. 2001) citing United States vs. Andrews 633 F. 2d

Furthermore, the Defendant claims Selective Prosecution.

1. Others similarly situated generally had not been prosecuted for conduct similar to petitioners.

2. "The government's discriminatory selection was based on impermissible grounds as race, religion, or exercise of first amendment rights." *Wayne vs. USA 170 US 598549 F.Supp. 1376138 (C.D. Cal.1982)*

"Disparate treatment of similarly situated person equal protection claim of selective prosecution." Jackson vs. City of Hearne, 959 F.3d. 194(5th Cir. 2020) at 201.

"Federal prosecutors have "broad discretion" in enforcing laws and a presumption of regularity attaches to their prosecutorial decisions." U.S. vs. Cannon 987 F. 3d. 924(11th Cir. 2021) at 936-7

Selective Prosecution is an "Unconstitutional Manner" must show that the Federal Prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose."

1. The discriminatory effect prong of this test requires showing similarly situated individuals were not prosecuted.

All of these defendants were charged with the felony 18USC1512(c)(2) for their actions on January 6, 2021 and were offered plea deals to a misdemeanor.

21-cr-125 Brian McCreary

21-cr-139 Rachael Lynn Pert

21-cr-139 Dana Joe Winn

21-cr-Jeffery Sane Witcher

21-cr-277 Kevin Francisco Cordon

21-cr-68 Jenny Louise Cudd

21-cr-68 Eliel Rosa

21-cr-71 Karl Dresch

21-cr-271 Dawn Bancroft (entered the Chambers, quoting "looking for Pelosi to shoot her in the freakin' head, but couldn't find her")

2. "The discriminatory effect prong of this test requires the decision maker selected or reaffirmed a particular course of action, at least in part because of not merely in spite of its adverse effect upon an identifiable group." *United States v. Wasserman (M.D.Fla. 2021) (10/08/21)*

In conclusion, the Defendant asked that the felony charge 18 U.S.C. 1512(c)(2) be dismissed on these arguments: The debate in separate houses not constituting an "Official Proceeding, the nexus of the timing of the recess to the "call of the chair" Constitutionality of the statute, Multiplicity of the charges overlapping, and Vindictive and Selective Prosecution.

Made by hand on this [11th] day of February 2022

By: _____

Exhibit 1



exhibit 2



Exhibit 3



YouTube video Main Columbus Doors 1-45 - 4-00 pm 34 video sync

2:29:51 PM



YouTube video Main Columbus Doors 1-45 - 4-00 pm 34 video sync

2:30:06 PM

Exhibit 4



Exhibit 5



exhibit 6



Exhibit 1





Exhibit 8



exhibit 11



SENATE_FLOOR_010621_1329P_1414P (1)

stand in recess until the Call of the
Chair.

Exhibit 12



SENATE_FLOOR_010621_1329P_1414P (1)



**★ ★ ★ United States Senate ★ ★ ★**
**117ᵀᴴ CONGRESS, 1ˢᵀ SESSION**

THE SENATE STANDS IN
RECESS SUBJECT TO THE
CALL OF THE CHAIR.

SENATE_FLOOR_010621_1329P_1414P (1)

Exhibit 13



exhibit 14



Exhibit 15



exhibit 16



Exhibit 17



Exhibit 10



Exhibit A 19



Exhibit 20



Exhibit 21



Exhibit 22



Exhibit 23



2021_01_06_ISOCAM5_SENFL_1    TCG 14;44;39;39

2021_01_06_ISOCAM5_SENFL_1    TCG 15;10;24;10

lot people in senate room

Exhibit 24



Exhibit 25



Exhibit 26



Exhibit 27



Exhibit 28



Exhibit 29



2021_01_06_ISOCAM8_SENFL    TCG 14;51;45;12

0:00:03                                                              0:52:58

2021_01_06_ISOCAM8_SENFL    TCG 15;07;23;52

Exhibit 30



Exhibit 31



Exhibit 32



EXhibit  33



Exhibit 34



Exhibit 35



Travis Coley MPD. Body Cam Video



0959 USC 02 Rotunda South - 2021-01-06_15h01m56s-15h07m00s

Exhibit 56



0959 USC 02 Rotunda South - 2021-01-06_15h01m56s-15h07m00s

0960 USC 02 Rotunda North - 2021-01-06_14h51m40s-14h57m37s

0:00:03

Exhibit 87



Matthew Lapitsky MPD. CLIP. Body Cam Video. 145635-145959

Matthew Lapitsky MPD. CLIP. Body Cam Video. 145635-145959

Exhibit 58



Exhibit 38



Plywood on the opening of the
tunnel with Wooden slats

Exhibit 80



Exhibit 11





7029 USCS 02 Rotunda Door Interior - 2021-01-06_14h43m10s-14h44m44s

7029 USCS 02 Rotunda Door Interior - 2021-01-06_15h21m05s-15h21m43s