**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No. 1:21-cr-00386-TNM-2** |
| | : | |
| **PAULINE BAUER** | : | |
| | : | |
| Defendant. | : | |

**MOTION IN LIMINE REGARDING**
**AUTHENTICATION OF VIDEO AND OTHER EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits the following motion *in limine* regarding the

authentication of video, photographic, and documentary evidence at trial.   The United States of

America hereby moves this Court, *in limine*, for a pretrial ruling that the identified photographic,

video, and documentary evidence is properly authenticated under Federal Rules of Evidence 104,

901, and 902, and is admissible.

This Motion seeks rulings on four categories of evidence.   First, the government

anticipates introducing video footage of events on the floor of the Senate and the House of

Representatives in connection with the Electoral College certification proceedings, both before

and after the breach of the Capitol.   Second, the government anticipates introducing

documentary evidence from the Congressional Record, and approved and signed Congressional

Resolutions concerning the Electoral College Certification Process, all of which are self-

authenticating public records.   Third, the government intends to introduce the constitutional and

statutory authority for the Electoral College Certification proceedings, of which the Court can

take Judicial Notice.   Fourth, the government anticipates introducing relevant posts, chats, and

videos obtained from Facebook, which are self-authenticating and admissible under Fed. R. Evid. 803 & 902.[1]   The government has asked the defendant to stipulate to the authenticity of all these materials and has received no response to date.

.

## I.   **BACKGROUND**

On January 6, 2021, Congress assembled in a Joint Session at the United States Capitol to declare the winner of the 2020 presidential election by reviewing and certifying the Electoral College ballots. The defendant was aware of this proceeding, and she wanted to stop it.

The riot at, and attack on, the United States Capitol Building was recorded on video: on surveillance footage captured by the USCP cameras; on MPD body-worn cameras; and on cameras and phones carried by journalists, members of the mob, and other persons present in the U.S. Capitol Building on January 6, 2021. The government's case will rely heavily on such evidence to prove and explain the defendant's conduct, to contextualize it through other contemporaneous events, and to give the jury a sense of this defendant's crimes in the context of the riot as a whole. This motion outlines the types of exhibits the government plans to use and seeks a pretrial ruling on the authenticity and admissibility of several types of evidence.

Much of the USCP CCTV video, BWC video, and other video is cross-corroborated by the defendant's own video footage, and that of her friend Sandra Weyer.   Ms. Bauer's and Ms. Weyer's cell phones were seized pursuant to search warrants, and her and Ms. Weyer's Facebook

---

[1] The government also intends to introduce Body Worn Camera (BWC) footage from Metropolitan Police Department (MPD) officers and clips of CCTV video from the United States Capitol Police (USCP), either by stipulation or other forms of authentication.   That evidence will provide additional corroboration for some of the social media evidence that is the subject of this motion.

accounts were seized pursuant to search warrants.   Corresponding Business Record certifications are attached for the Facebook accounts and have previously been produced in discovery.   *See* Exhibit 3 and 4.   By inclusion herein, the government gives notice pursuant to Federal Rule of Evidence 902 of "of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them."

On multiple prior occasions, the government has provided draft stipulations to counsel concerning the authenticity of these and other ministerial matters related to trial, and hopes that some or all of these issues may be resolved pretrial in order to streamline the proceedings.

## II.   **ARGUMENT**

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

(1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.
. . .
(3) Comparison by an Expert Witness or the Trier of Fact. A comparison with an authenticated specimen by an expert witness or the trier of fact.
(4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
. . .
(9) Evidence About a Process or System. Evidence describing a process or system and showing that it produces an accurate result.

Fed. R. Evid. 901(b)(1), (3), (4), (9).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle."

*United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases). *See also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a prima facie showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (*quoting United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Vidacek*, 553 F.3d at 349. *See also, e.g., Belfast*, 611 F.3d at 819 ("Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981).

4

*See, e.g., United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'") (*quoting United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (*quoting United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)). *See, e.g., United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g., United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus

admissible, the government must introduce sufficient evidence at trial from which a reasonable juror could reach the same conclusion regarding authenticity. *See, e.g., United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

A.     **Authentication of Congressional Video**

On January 6, 2021, much of the proceedings taking place on the Senate, and House, floor were contemporaneously recorded by the Senate Recording Studio and the House Recording Studio. The United States Senate has an affiliated entity called the Senate Recording Studio that contemporaneously records Senate proceedings and distributes those recordings to the public. *See*  https://floor.senate.gov/MediaPlayer.php?view_id=2&clip_id=399, last accessed Dec. 16, 2021:

The Senate Recording Studio recorded the proceedings relating to the Electoral College Certification on January 6, 2021 up to the point when the rioters breached the Capitol Building itself and the Senate was forced into recess.   *See id.*   Subsequently, the Senate Recording Studio recorded the Electoral College Certification process after the rioters were cleared from the Capitol Building and the session resumed.   *See id.*   In addition, the Senate recording studio recorded rioters who were present on the Senate floor during the recess.   The House of Representatives has a similar organization.   *See* Certificates of Authenticity for the Senate and House of Representatives, attached as Exhibits 1 and 2, respectively.

The Senate Recording Studio recorded at least three events relevant to this trial: Vice President Michael Pence gaveling the session to order and reading from Senate Congressional Resolution 1 and 3 U.S.C. § 17 in conjunction with the official proceedings of the Electoral College Certification, The Senate being gaveled into recess as Senator Lankford is told that the

protestors are in the building and the resulting evacuation of the Senate Floor Chamber, and the Joint Session of Congress reconvening to finish the Electoral College Certification hours later, after the rioters have been cleared from the U.S. Capitol.    Digital copies of the clips have been produced in discovery.    Screen captures of those events are shown below:

Electoral College Certification Proceedings:

 

Senate Floor when Rioters Enter the Capitol Building:

 

Joint Session when Congress Reconvenes:



The first clip is less than one minute, and the two remaining clips are approximately three minutes in length.

The House Recording Studio video is similar, and has similar relevance.    That video shows that the rioter's breach of the Capitol actually obstructed and stopped the Congressional proceedings on January 6, 2021.



9



Cam8.mov, *see also* Exhibit 2.    The House videos show the United States House of Representatives barricaded at gunpoint because the rioters breached the Capitol.    It also shows individuals sheltering for safety in the House Gallery.

Ms. Bauer had breached the U.S. Capitol via the East Rotunda door at approximately 2:43 p.m. and was not expelled until approximately 3:21 p.m.    During that time period, Ashli Babbitt was shot as she tried to climb through a broken window to access the House Floor, rioters had breached the Senate floor and were parading in the Chamber and sitting in the Vice President's chair.









At 2:57 p.m. when Ms. Bauer was screaming her demand that MPD Officers bring House Speaker Nancy Pelosi to her so they can hang her, the House Chamber was on lockdown at gunpoint, and rioters had taken over the Senate floor.







13

### 1.    Self-authentication under FRE 902

The Congressional videos are self-authenticating and should be admitted on that basis.

Federal Rule of Evidence 902 governs the authentication of evidence that is "self-

authenticating."    FRE 902 provides, in part, that:

> The following items of evidence are self-authenticating; they require no extrinsic
> evidence of authenticity in order to be admitted:
>
>   . . .
>
> (11) Certified Domestic Records of a Regularly Conducted Activity. The original or a
> copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown
> by a certification of the custodian or another qualified person that complies with a federal
> statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the
> proponent must give an adverse party reasonable written notice of the intent to offer the
> record—and must make the record and certification available for inspection—so that the
> party has a fair opportunity to challenge them.    . . .
>
>
> (13) Certified Records Generated by an Electronic Process or System. A record generated
> by an electronic process or system that produces an accurate result, as shown by a
> certification of a qualified person that complies with the certification requirements of
> Rule 902(11) or (12).    The proponent must also meet the notice requirements of Rule
> 902(11).

Fed. R. Evid. 902.    The government gives notice, pursuant to FRE 902 of its intent to offer the

records and submits that the videos are self-authenticating under FRE 902 (11) and (13).    *See*

Certification of Senate and House video, attached as Exhibits 1 and 2.

The video footage is also self-authenticating under Federal Rule of Evidence 902(5).

Federal Rule of Evidence 902(5) provides, in part, that:

> The following items of evidence are self-authenticating; they require no extrinsic
> evidence of authenticity in order to be admitted:
>
> . . .
>
> (5) Official Publications. A book, pamphlet, or other publication purporting to be issued

14

by a public authority

Fed. R. Evid R 902.    Some of the video feed from which the clips are taken are available on the

Senate.gov website.    *See* https://floor.senate.gov/MediaPlayer.php?view_id=2&clip_id=3993,

last accessed on Oct. 20, 2021.    Moreover, the declaration of Diego Torres from the Senate

Recording Studio, attached hereto as Exhibit 1, establishes the video as an official publication.

It is well established that materials found on a government public website are self-authenticating

under Federal Rule of Evidence 902(5).    *See Williams v. Long*, 585 F. Supp. 2d 679, (D. Md.

2008).    *See also Singletary v. Howard Univ.*, No. 1:17-cv-01198, 2018 U.S. Dist. LEXIS

164945, 2018 WL 4623569 (D.D.C., Sept. 26, 2018), *MMA Consultants 1, Inc. v. Republic of

Peru*, 245 F. Supp. 3d 486 (S.D.N.Y. 2017) (Congressional transcripts self-authenticating under

FRE 902(5).

### 2.    Authentication under FRE 901(b)(9)

In addition, the videos can be separately authenticated under Federal Rule of Evidence

901.    Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or

identifying an item of evidence, the proponent must produce evidence sufficient to support a

finding that the item is what the proponent claims it is."    Rule 901(b) provides a non-exhaustive

list of examples of evidence that satisfies this requirement. As particularly relevant here, those

examples include

- (9) Evidence About a Process or System. Evidence describing a process or system and showing that it produces an accurate result.

Fed. R. Evid. 901(b) (9).

The video clips of the Senate and Joint Session proceedings are separately authenticated

15

under Federal Rule of Evidence 901.   Diego Torres is a broadcast technician who works at the

Senate Recording Studio.   He was present on January 6, 2021, and worked to preserve the

integrity of the video.   As his declaration makes clear, the video system is a closed system and

not subject to outside influences or manipulation.   He has reviewed the video feed and attests to

its authenticity and accuracy.   See declaration of Diego Torres, attached as Exhibit 1.   That

alone is sufficient to authenticate the video footage. *See United States v. Blackwell*, 694 F.2d

1030-31, 1026 (D.C. Cir. 1982).

### B.      Authentication of the Congressional Record and S. Con. Res 1

The Congressional proceedings on January 6, 2021 were memorialized in the

Congressional Record.   The Congressional Record is a public record under Federal Rule of

Evidence 902(5) and thus is self-authenticating under Fed. R. Eviv. 902(5).   *See MMA*

*Consultants 1, Inc. v. Republic of Peru,* 245 F. Supp. 3d 486 (S.D.N.Y. 2017) (Congressional

transcripts self-authenticating under FRE 902(5).   The government intends to introduce portions

of the Congressional Record at trial, as well as Senate Congressional Resolution 1.   *See*

Exhibits 5, 6, and 7.

### C.      Judicial Notice of Federal Electoral College Certification Law

The government requests that the Court take judicial notice of, and admit into evidence,

copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment,

as well as 3 U.S.C. §§ 15-18 relating to the Electoral College Certification Official Proceedings.

*See* Exhibits 8, 9, 10, 11, 12, and 13.   The proceedings that took place on January 6, 2021 were

mandated by, and directed under the authority of, several constitutional and federal statutory

provisions.   In fact, as Vice President Pence gaveled the Senate to Order on January 6, 2021 to

16

proceed with the Electoral College Certification Official Proceeding, he quoted directly from, and cited to, 3 U.S.C. § 17.

It is well established that district courts may take judicial notice of law "without plea or proof."   *See United States v. Davila-Nieves*, 670 F.3d 1, 7 (1st Cir. 2012).   The government makes this request even though courts have said that "[i]nsofar as the requests pertain to public laws, no motion is required in order for the court to take judicial notice."   *See Moore v. Reno*, No. 00-5180, 2000 U.S. App. LEXIS 35425; 2000 WL 1838862 (D.D.C. Nov. 14, 2000). Accordingly, the government requests that the Court take judicial notice of the law regarding the certification of the Electoral College.

### D.    Facebook Records Are Self-Authenticating Business Records

The defendant's friend, as well as her former co-defendant William Blauser, are captured on video and images taken by Sandra Weyer and posted to Facebook.   *See United States v. Weyer*, 1:21-mj-00483-RMM-1, ECF 1-1, pg. 8.   A photograph of the group of six, including defendant, appears on Weyer's Facebook page, standing together on the outside of the cordoned off area on the East Side of the Capitol before the breach, and together after the breach as well.



*See* Weyer FB Page, activity_log_993665497824543, activity_log_993722061152220.

Weyer also recorded the breach of the barricades and livestreamed the breach to her Facebook page.    As she streamed the breach of the East side barricade, Weyer could be heard to scream "tear it down."    In a second livestream taken moments later, Weyer records as they rush past officers towards the Capitol steps.    In the second clip, Weyer can be heard to say "stormin the Capitol, brought down the barriers."    During shouts of "traitors," "we brought down the barricades," and "fight back," Bauer moves closer to Weyer and is captured in her video feed. With Bauer beside her, Weyer yells "pushing" and "they're macing."

  

video_993456901178736          video_993456961178730          video_993456961178730

Once Bauer, Weyer, and the others in the group have pushed to the top of the stairs and to the East Rotunda door, Weyer states "broken glass," the crowd chants "whose house-our house," and a flash bang grenade goes off.    Bauer is inches away and Weyer asks her if she is ok.    As the door has been forced open in front of them from within by rioter Christopher Warnagiris[2]  and

---

[2] *See United States v. Christopher Warnagiris*, 1:21-cr-00382-PLF-1 ECF No. 1.

later by other rioters removing obstacles, the crowd cheers and screams "go, go, go, go . . ."
Inches from Bauer, Weyer yells "we're going in" as the crowd yells "go, go, go . . . ."   Weyer
screams "you fucking bastards" and "forward march." Bauer can be seen inches in front of
Weyer using her cell phone, and also wearing her distinctive hat.   At one point, Weyer yells
"break the door."   Also, a rioter can be heard screaming "grab the shield" as police stand
flattened against the wall outside of the East Rotunda doors by the crowd.

  

video_993474384510321      video_993474384510321      video_993474384510321

So long as the government lays the proper foundation of relevance, described above, the
Facebook photos, posts, and video are admissible, and authentic, as self-authenticating business
records produced by Facebook along with a business records certification.   *See United States v.*
*Hassan*, 742 F.3d 104, 133 (4thCir. 2014) (Facebook pages and YouTube videos were self-
authenticating under Federal Rule of Evidence 902(11)), *but see United States v. Browne*, 834
F.3d 403, 409-11, (3d Cir. 2016) (holding that Facebook "chats" were not self-authenticating

business records).

WHEREFORE, the government respectfully requests that this Court grant the motion for a pre-trial determination that the aforementioned exhibits are authentic under the Federal Rules of Evidence and admissible at trial.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

_____/s/ James D. Peterson_____
James D. Peterson
Special Assistant United States Attorney
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
Mobile: (202) 230-0693
James.d.peterson@usdoj.gov

s/ Joseph McFarlane
PA Bar No. 311698
United States Department of Justice
1400 New York Ave NW
Washington, D.C. 20005
Desk: (202) 514-6220
Mobile: (202) 368-6049
joseph.mcfarlane@usdoj.gov