UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-00386-TNM-2 |
| | : | |
| PAULINE BAUER | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and legal issues that may be brought before the Court. As described below, the government will introduce video evidence, testimony from law enforcement witnesses, and substantial evidence from social media and other sources about her crimes at the U.S. Capitol on January 6, 2021. In an effort to streamline its presentation for this bench trial and focus on the matters in dispute, the parties have agreed to certain stipulations. Due to witness availability, the government expects to rest its case the morning of Friday, January 20, 2023.

**I.      THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS**

On January 6, 2021, thousands of people descended on the U.S. Capitol and interrupted the joint session of Congress that had convened to certify the votes of the Electoral College for the 2020 Presidential Election. The government's evidence will briefly set the stage for the joint session and the riot in which the defendants participated, and then focus on the defendant's criminal conduct and intent that day.

As the Court is aware, Vice President Michael Pence, as the President of the Senate, was present at the Capitol to preside over the joint session and Senate proceedings. On that day,

Secret Service was present for the protection of the Vice President and his family members, and physical barriers and law enforcement officers surrounded the U.S. Capitol building and grounds. At all relevant times, the United States Capitol building and its grounds—including the East Side of the Capitol, and the entire Capitol building itself—were closed to members of the public.

The defendant, Pauline Bauer was among the group of rioters who illegally entered the U.S. Capitol grounds, and then the U.S. Capitol building, that day. The defendant traveled from her residence in Kane, Pennsylvania to attend the "Stop the Steal" rally to hear former President Donald Trump speak at the rally. Prior to traveling to Washington, D.C., Ms. Bauer traveled to Harrisburg, PA to a "Stop the Steal" rally on January 5, 2021.  Ms. Bauer recorded some of the speakers taking about fraud and how the election was stolen.

Ms. Bauer came to Washington D.C. as part of group that included: Ms. Bauer, William Blauser, Sandra Weyer, Brian Korte, Lynwood Nester, and Michael Pomeroy.[1]



---

[1] All of the members of the group picture have been arrested for their conduct related to the events on January 6, 2021.  *See United States v. Korte, Nester, and Pomeroy*, 1:22-cr-00183-TSC-1, *United States v. Weyer*, 1:22-cr-00040-EGS-1, *United States v. Blauser*, 1:21-cr-00386-TNM-2.

Ms. Bauer was part of the crowd that gathered at the East Plaza side of the United States Capitol when the bicycle rack barricades were up and the area was monitored by members of the United States Capitol Police (USCP). Ms. Bauer was also part of the crowd that first breached the East Plaza barricades at approximately 1:59 p.m. Subsequently, Ms. Bauer was part of the crowd that forced members of the USCP to retreat up the stairs in front of the East Rotunda doors at approximately 2:06 p.m. While she was on the terrace in front of the East Rotunda doors, Ms. Bauer and others were affected by mace or pepper spray. The East Rotunda doors were initially breached from the inside by rioters opening the doors from the inside at approximately 2:26 p.m. The doors were resecured, but other rioters breached the doors again at approximately 2:36 p.m. At 2:44 p.m. Ms. Bauer and Mr. Blauser forced their way in through the East Rotunda door that was being guarded/protected by several USCP officers, including Officer Carrion.

Once inside the U.S. Capitol, Ms. Bauer went to the Rotunda. On the West side of the Rotunda, Ms. Bauer confronted Metropolitan Police Department (MPD) Officers protecting the West Entrance to the Rotunda. Ms. Bauer yelled at the officers "We want Nancy Pelosi, that's who we want." Ms. Bauer then began screaming "Bring them out, You bring them out or we're coming in." Ms. Bauer continued to yell, stating "They're criminals. They need to hang." She screamed at the officers "Bring Nancy Pelosi out here now. We want to hang that fucking bitch. Bring her out." As this Court found in another case, "I note his presence in a mob that is apparently looking for the senators who are supposed to be counting votes, suggests an awareness of the implications of their actions." *United States v. Seefried*, 1:21-cr-00287-TNM, Bench Trial Verdict, dated June 15, 2022, pg. 12. When an MPD Officer attempted to push Ms. Bauer away

3

from the area he was protecting, she screamed at the officer "Fuck you, you son of a bitch, you back up" and pushed the officer. A short time later, Ms. Bauer was physically removed from the Rotunda by MPD officers in riot gear and was pushed out with the other rioters.

## II.   THE GOVERNMENT'S PROOF

The government will call an experienced Officer from the USCP who will provide an overview of the Capitol building and grounds and set the stage for what occurred there on January 6, 2021, and specifically how it relates to Ms. Bauer. Video evidence will show what occurred as the Capitol grounds and building were breached. Because this Court is familiar with the "overview evidence" that the government has offered in prior Capitol siege trials, the government has compiled a video presentation that is tailored to the defendants' locations and conduct while she was at the U.S. Capitol while also providing the context in which their conduct took place.

The government's presentation will also include the testimony of MPD and USCP officers who dealt directly with the defendant. Their testimony will be accompanied by video and photographs that capture the defendant inside the Capitol.

Finally, the government will also present the testimony of Federal Bureau of Investigation (FBI) agents who investigated this case and obtained information on Facebook and from the defendant's cell phone.

**A. Stipulated Testimony**

In *United States v. Couy Griffin*, 21-cr-00092-TNM (March 21-22, 2022), this Court heard the testimony of United States Secret Service (USSS) Inspector Lanelle Hawa. Inspector Hawa testified regarding the restricted perimeter surrounding the U.S. Capitol building and grounds and

the presence of then Vice President Pence and his immediate family within the restricted perimeter from the afternoon of January 6, 2021 until the morning of January 7, 2021.

To save time, and to focus on the matters that will likely be in dispute, the government, with the consent of the defendant, plans to offer into evidence a transcript of Inspector Hawa's testimony and the accompanying exhibits from the *Griffin* trial.

### B. Trial Stipulations

The government and defendant have reached stipulations to the following facts which all parties agree are not in dispute. These stipulations include: (1) a description of the Capitol Building and Grounds; (2) the operation and maintenance of closed-circuit video monitoring and recording equipment utilized by the USCP on January 6, 2021; (3) the Body Worn Camera (BWC) video footage taken by MPD Officers on January 6, 2021; (4) the defendant's identity and presence in the Capitol on January 6, 2021; (5) the COVID Closure of the Capitol before and on January 6, 2021; and (6) the accuracy and authenticity of the cell phone information extracted from Ms. Bauer's cell phone. In addition, the parties agree that the Facebook records from Ms. Bauer and Ms. Sandra Weyer's account are authentic. The parties agree that all of the government Exhibits are authentic. Ms. Bauer reserves the right to object to the government's evidence on the basis or relevancy and prejudice.

### C. USCP Officers

USCP Lt. George McCree will serve as the government's overview witness regarding January 6, 2021. USCP Officer Marc Carrion will testify about his interactions with rioters, including Ms. Bauer, at the East Rotunda door. USCP Officer Mark Gazelle will testify about the Official Proceedings concerning the Electoral College Certifications Process. Collectively,

these officers will describe the group of rioters as intent on getting to the Members of Congress.

**1. Testimony of Lt. George McCree**

Lt. McCree will be an overview witness of the events at the U.S. Capitol,.   He will also testify regarding specific areas relevant to Ms. Bauer and her presence at the U.S. Capitol on January 6, 2021.   USCP Lt. George McCree will testify about the progression of the breach of the Capitol on the East side, including the area where Ms. Bauer breached and her advancement towards the East rotunda door.   Based upon the BWC video of MPD Officer Coley, USCP Lt. George McCree will testify about the proximity of Ms. Bauer to the Speaker's Office when she made the threats to hang Speake of the House Nancy Pelosi.   Ms. Bauer was a direct line approximately 25 feet away from Speaker Pelosi's Office.



**2. Testimony of Officer Marc Carrion**

The evidence will show that rioters breached the East Plaza bicycle barricades in the area near the Senate "Egg," and area on the North-East side of the Capitol. USCP officers retreated to the East Rotunda Center steps area.   At one point there were approximately 200 to 300 people

trying to get in and approximately 5 or so officers trying to stop the people from getting in. Other protesters were trying to open the doors from the inside so the officers were trying to keep the people from opening the doors from the inside as well as trying to keep the people from the outside from getting in through these doors. It is against this backdrop that Ms. Bauer forced entry into the Capitol Building.

### 3. Testimony of Officer Mark Gazelle

Officer Gazelle has been a U.S. Capitol Police Officer for almost 31 years. He is currently in the Senate Chamber Section working as an Officer, which is where he has been placed since 1997. To the best of his recollection, Officer Gazelle has worked almost all other Electoral College Certification days since the Clinton era, resulting in his familiarity with Joint Session Meetings and the roles of those involved. Officer Gazelle had been through the five Senate rotational stations multiple times on January 6, 2021; allowing him to see the activity and listen to some of the speeches on the Senate Floor. Later on in the day, when Officer Gazelle was at the Vice President station in the rotation, he started hearing "chatter" through his radio ear piece about rioters who had breached the fence. Officer Gazelle thought the issue would subside but as he was changing stations from the Vice President's Office to the Floor Officer, at the time in which U.S. Senator James Lankford was speaking, Officer Gazelle became aware that things were getting more serious.

The official proceeding instantly came to a halt and a recess was called following the aforementioned events Officer Gazelle heard. Officer Gazelle remembers seeing the Secret Service quickly escort the Vice President out of the Chamber, as well as the Dignitary Protection Detail (DPD) quickly escort U.S. Senator Chuck Grassley out as well.

**D. MPD Officers**

1. Travis Coley.   MPD Officer Travis Coley was present in the Rotunda of the U.S. Capitol Building on January 6, 2021 and interacted with Ms. Bauer.   MPD Officer Coley will testify about the threats made by Ms. Bauer, as well as the danger posed by Ms. Bauer and others at the Capitol that day.   MDP Officer Coley will testify that he was posted to protect the West Rotunda door area which fronts a stairway to the Upper West Terrace Door area where officers who were injured and regrouping were located.   The West Rotunda entryway is in close proximity to Speaker Pelosi's office suite as will be described by another, USCP, witness.

2. Marina Bronstein.   MPD Officer Bronstein was present in the Rotunda of the U.S. Capitol Building on January 6, 2021 and interacted with Ms. Bauer.   MPD Officer Bronstein will testify about the threats made by Ms. Bauer, as well as the danger posed by Ms. Bauer and others at the Capitol that day.

**E. FBI Officers**

1. Brent White.   SA White works for the FBI and was present for the execution of a search warrant at Ms. Bauer's residence on May 19, 2021.   SA White's team recovered items of clothing worn and possessed by Ms. Bauer in the U.S. Capitol on January 6, 2021, to include a Ludlow Pa Sportsman Club Sweatshirt, black coat, North Face mittens, and a rose iPhone FCCID BCGE3087AIC579CE3087A.   SA White was also present when Ms. Bauer attempted to locate her hat in multiple areas of the residence and commented she does not know where it is. Ms. Bauer was not able to find her hat and asked what happens if she could not find the hat.   As Ms. Bauer was walking out of the house, she asked her husband if he knew where her Trump tassel cap was. There is a stipulation as to Ms. Bauer's identification and presence at the Capitol on January 6,

8

2021.   SA White will testify concerning Ms. Bauer's presence and conduct at different locations at and in the Capitol on January 6, 2021 based upon the cell phone evidence recovered, as well as the other video evidence in the case.

2. Jared Horan.   SA Horan works for the FBI and authored the search warrants for Ms. Bauer's Facebook page as well as Ms. Sandra Weyer's Facebook page.   SA Horan is familiar with Facebook records generally, and Ms. Bauer and Ms. Weyer's Facebook records specifically. SA Horan will testify about the Facebook posts, and Livestream by Ms. Weyer that includes Ms. Bauer in the video streams.   Additionally, SA Horan will testify about texts and videos recovered from Ms. Bauer's cell phone by the FBI.

**F. Elements of the Crimes Alleged**

The Superseding Indictment charges five offenses.   The offenses are as follows[2]:

Count One

Count One of the Superseding Indictment charges the defendant with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and (2). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, the defendant attempted to or did obstruct or impede an official proceeding;

2. Second, the defendant intended to obstruct or impede the official proceeding;

3. Third, the defendant acted knowingly, with awareness that the natural and probable effect of her conduct would be to obstruct or impede the official proceeding; and

---

[2] Unless otherwise noted, the instructions here reflect the jury instructions used by this Court in *United States v. Hale-Cusanelli*, 21-CR-37 (TNM).

      4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

      1. First, that others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

      2. Second, that the defendants knew that obstruction of an official proceeding was going to be committed or was being committed by others;

      3. Third, that the defendants performed an act or acts in furtherance of the offense;

      4. Fourth, that the defendants knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

      5. Fifth, the defendants did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

      The term "official proceeding" includes a proceeding before the Congress. The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant. As used in Count One, the term "official proceeding" means Congress's Joint Session to certify the Electoral College vote.

      A person acts "knowingly" if she realizes what she is doing and is aware of the nature of

her conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, the Court may consider all of the evidence, including what the defendant did or said.

## Count Two

Count Two of the Superseding Indictment charges the defendants with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1).   In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2. Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning as previously defined.

## Count Three

Count Three of the Superseding Indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in

11

      proximity to, any restricted building or grounds;

2.     Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3.     Third, that the defendant's conduct occurred when, or so that, her conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

The terms "restricted building or grounds" and "knowingly" have the same meanings as previously defined.

## Count Four

Count Four of the Superseding Indictment charges the defendants with disorderly or disruptive conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1.     First, that the defendants engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2.     Second, that the defendants did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

3.     Third, that the defendants acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Three defining "disorderly conduct" and "disruptive conduct."

A person acts "willfully" if she acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

The term "knowingly" has the same meaning as previously defined.

## Count Five

Count Five of the Superseding Indictment charges the defendants with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In order to find the defendants guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings;

2. Second, that the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[3]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings as previously defined.

Pursuant to the Court's order, the government hereby submits this pretrial statement.

---

[3] *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

13

A.     **Statement of the Case**

The government has charged the defendant, Ms. Pauline Bauer, with five crimes relating to Congress's meeting at the United States Capitol on January 6, 2021, to certify the Electoral College vote for President. First, she is charged with obstruction of an official proceeding (18 U.S.C. §§ 1512(c)(2)and (2).   Second, she is charged with entering and remaining in a restricted building (18 U.S.C. § 1752(a)(1)). Third, she is charged with disorderly or disruptive conduct in a restricted building (18 U.S.C. § 1752(a)(2)).   Fourth, she is charged with disorderly and disruptive conduct in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress or either House of Congress (18 U.S.C. § 5104(e)(2)(D)).   Lastly, she is charged with parading, demonstrating, and picketing in a Capitol Building (18 U.S.C. § 5104(e)(2)(G)).

Ms. Bauer has pleaded not guilty to all charges.

The government will argue that Ms. Bauer's conduct in "entering the U.S. Capitol while the certification was supposed to take place, engaging in a heated confrontation with [an officer in near proximity to the Speaker's Office suites]", and being present in an area where the Electoral College Certification boxes were transported between Chambers, in addition to her joining of a larger mob, had the effect of obstructing the certification.   *See United States v. Seefried*, 1:21-cr-00287-TNM, Bench Trial Verdict, dated June 15, 2022, pg. 8.   Moreover, the Members of Congress had to shelter in place in close proximity to where the defendant was present and threatening the Speaker of the House, "in part because of the mob -- the mob's illegal actions and presence." *Id*. at 9.   The government will argue that the evidence will establish the second element, that Ms. Bauer intended to obstruct or impede the certification.   *Id*.   Ms. Bauer yelled

14

for Speaker of the House Nancy Pelosi so she could hang her. She yelled that they wanted to bring them out there to hang them, and that if police officers did not bring them out, they would force their way in further into the Capitol. Ms. Bauer made these statements, and more, during a confrontation with Officer Coley and others at the doorway in the West Rotunda, a short distance from speaker Pelosi's office and the Floor of the House of Representatives. *Id*. The government will also establish that the defendant acted knowingly with awareness that the natural and probable effect of her conduct would be to obstruct or impede the official proceeding. Ms. Bauer texted and posted many things, amongst them:

> Pauline Bauer
> Do you really think anyone could break into the capital. The antagonists were let in. We all got maced trying to stop what was happening. They used us for a movie so you could watch it on the news

A short time prior to her entry and threatening behavior, Speaker Pelosi was presiding over the House of Representatives and presiding over the House portion of the objections to the Electoral College Ballots. Ms. Bauer knew what she was doing. Finally, the government will prove that Ms. Bauer acted corruptly. "To act corruptly, the defendant must use unlawful means or have a wrongful or unlawful purpose or both. The defendant must also act with consciousness of wrongdoing." *See Seefried*, 1:21-cr-00287-TNM, Bench Trial Verdict, dated June 15, 2022, pg. 12.

   **B.**  **List of Government Witnesses**

    1.  USCP Overview witness Lt. George McCree
    2.  USSS Lanelle Hawa – Stipulated testimony
    3.  USCP Officer Mark Gazelle – Possible stipulated testimony
    4.  MPD Officer Travis Coley
    5.  USCP Officer Marc Carrion
    6.  MPD Officer Marina Bronstein

   7. SA Brent White – FBI
   8. SA Jared Horan – FBI

**C.** Based upon representations of the defendant, the defendant reserves the right to testify, and may call William Blauser as a witness, and may call one or two character witnesses.

**D.** **List of Expert Witnesses**

None. Neither party is calling any expert witnesses.

**E.** **List of Prior Convictions**

None.

**F.** **List of Government Exhibits**

The government has provided an Exhibit list to the defense on or about December 12, 2022, and has provided the Exhibits themselves to the defendant. The government will provide an Exhibit list and Exhibits to the Court as provided by the Court's Order. The parties agree that the government Exhibits are Authentic, and the defense reserves the right to object to the admissibility of the Exhibits based upon relevance and/or prejudice.

**G.** **List of Defense Exhibits**

Based upon representations of the defendant, the defendant has no Exhibits for trial.

**H.** **Stipulations**

Attached are stipulations:

700 Stipulation re: Cell Phone

701 Stipulation re: ID

702 Stipulation re: USCP Video

703 Stipulation re: BWC video

| | |
|---|---|
| 704 | Stipulation re: Capitol Closed |
| 705 | Stipulation re: Grounds and Certification of Electoral College |

Ms. Bauer agrees not to reveal or cross-examine witnesses about the specific camera locations of the USCP CCTV video.   Ms. Bauer reserves the right to fully explore what areas are revealed and shown in the admitted CCTV video footage.

### I.     List of Lesser-Included Offenses

None.

### J.     List of Business Record Certifications

Attached.   The parties agree that the Facebook records of Ms. Bauer and Sandra Weyer are authentic.   The defendant reserves the right to object based upon relevance and prejudice.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:

       /s/ James D. Peterson
James D. Peterson
Special Assistant United States Attorney
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
Mobile: (202) 230-0693
James.d.peterson@usdoj.gov


*s/ Joseph McFarlane*
PA Bar No. 311698

17

United States Department of Justice
1400 New York Ave NW
Washington, D.C. 20005
Desk: (202) 514-6220
Mobile: (202) 368-6049
joseph.mcfarlane@usdoj.gov