**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Docket No. 1:21-cr-00386 |
| | ) | |
| v. | ) | ELECTRONICALLY FILED |
| | ) | |
| PAULINE BAUER, | ) | The Honorable Trevor N. McFadden |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**AND NOW**, to-wit, comes Defendant, Pauline Bauer (hereinafter "Ms. Bauer") by and through her attorney, Komron Jon Maknoon, Esquire, and respectfully files the Defendant's Memorandum in Aid of Sentencing setting forth all factors this Honorable Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553(a).

**APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THIS CASE**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**I.     SENTENCING FACTODS UNDER 18 U.S.C.§ 3553(A)**

Sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors that must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing. In the present case, 3553(a) factors weigh heavily towards a sentence of non-incarceration.

**A.     The Nature and Circumstances of the Offense**

1

Driven by her concerns over the impact of lockdowns preventing operation of her restaurant, Bob's Trading Post, and the well-being of the elderly individuals in her community who heavily relied on the establishment, Ms. Pauline Bauer actively took part in a rally held in Harrisburg, Pennsylvania, on January 5, 2021. Despite the rally being labeled as "stop the steal," Ms. Bauer and her small group attended with the primary purpose of listening to Pennsylvania State Senator Doug Mastriano's address, which encompassed critical state-specific topics such as COVID-19, the lockdowns, and state elections. Alongside these focal points, the event featured a diverse array of speakers who touched upon a range of issues affecting the people of Pennsylvania, including those related to the previous presidential election.

On the morning of January 6, 2021, Ms. Bauer, accompanied by a small group of individuals, travelled to Washington, D.C. Their purpose was to witness Senator Mastriano speak once again. Upon their arrival and with some spare time available, Ms. Bauer and her group made the decision to attend the rally held at the ellipse, where former President Trump and other speakers were scheduled to address the crowd. However, being aware that Senator Mastriano was slated to deliver a speech at Freedom Plaza and the large crowd, they opted to head towards Freedom Plaza. To their surprise, upon reaching Freedom Plaza, they discovered it was vacant and subsequently learned that Senator Mastriano's speaking location had been changed to the United States Capitol Building (Capital Building). As a result, Ms. Bauer and her group redirected their path and proceeded to the west side of the Capitol Building to hear Senator Mastriano's speech.

Having not found any speakers or platforms there, Ms. Bauer and her group decided to relocate to the east side of the Capitol Building, hoping to witness Senator Mastriano's speech. While on the east side of the Capitol Building, evidence presented at trial included testimonies from William Blauser and others, indicating that members of the crowd expressed sentiments such

as "Pence through Trump under the bus" and similar remarks. Shortly thereafter, numerous official vehicles that had been parked inside the barricades exited the area in an orderly manner. Immediately following this, a group of individuals located several yards to Ms. Bauer's right broke through the barriers and approached the steps on the east side of the Capitol Building. In response to this development, individuals near Ms. Bauer, who were unrelated to her, also broke the barrier, and she followed suit. It is crucial to note that at no point did Ms. Bauer personally break any barriers.

Upon arriving at the steps of the east side of the Capitol Building, the situation rapidly deteriorated into a state of chaos and tension. The atmosphere was characterized by the presence of shouting voices, a densely packed crowd, the deployment of tear gas, rubber bullets, and the detonation of flash-bang grenades. In the midst of this highly agitated period, Ms. Bauer was exposed to tear gas, intensifying an already challenging and overwhelming environment. The subsequent behavior demonstrated by Ms. Bauer was a direct consequence of the chaotic and tense circumstances she <u>willingly</u> put herself in. She fully acknowledges her responsibility for her actions and acknowledges that her conduct contributed to the overall atmosphere, further aggravating the disorderliness of the situation. When inside the Capital Building, Ms. Bauer's conduct alone had the potential to incite violence.

During the allocution, Ms. Bauer will take the opportunity to address her actions of entering the Capitol Building and her subsequent conduct.

    **B.**    **History and Characteristics of the Offender**

*Personal and Family Data*

Ms. Bauer was born on June 4, 1967, to a hardworking mother and father. Her father was a truck driver, and her mother was a house maker and helped on the farm. Ms. Bauer describes her

childhood as positive and the foundation of her lifelong desire to put in a hard day's work, to treat others with respect, and to be charitable. Her parents were married for 50 years, and she has a close-knit family. In November 2022, Ms. Bauer's father passed away after enduring several months of hardship following his heart surgery.

Having resided in various rural locations, Ms. Bauer eventually found her home in Kane, a remote area situated in Northern Pennsylvania, directly adjacent to the state's sole national forest. It was there that she and her husband purchased Bob's Trading Post, a family-oriented restaurant that is known for pizza and ice cream. As the restaurant prospered, so did its importance in the community under the leadership of Ms. Bauer.

*Mental and Emotion Health*

Although Ms. Bauer has not undergone mental health treatment, the ongoing case and the experience of being incarcerated while grappling with illness have had a profound impact on her overall well-being. Moreover, the passing of her father occurred shortly after her release from incarceration, adding further emotional strain. During these trying times, Ms. Bauer seeks comfort and support through her faith, the presence of her loved ones, and the supportive community that surrounds her.

*Physical Health*

Undersigned counsel requests to incorporate Ms. Bauer's medical records from the sealed supplement at ECF Doc. No. 137 by reference. These records provide evidence of severe medical complications that Ms. Bauer attributes to a failure to receive adequate treatment during her time of incarceration. It is evident that Ms. Bauer's chronic medical conditions, coupled with the complexity of her treatment needs, posed significant challenges that were not adequately addressed while she was incarcerated. Undersigned counsel argues that this is not solely due to the neglect

of the DC Correctional Treatment Facility, but rather highlights the inherent limitations of a prison environment in meeting Ms. Bauer's strict dietary requirements and rapidly changing medical condition in a timely and appropriate manner.

Throughout the process, it was necessary for Ms. Bauer to request medical attention by submitting medical slips. However, without a clear and immediate need for outside medical care, her conditions went undiagnosed and untreated despite Ms. Bauer's pleadings. It has been demonstrated through her hospitalization at Howard University Hospital that the consequences of inadequate treatment can result in serious health complications requiring hospitalization.

*Substance Abuse*

Non applicable.

*Education, Vocational and Special Skills/Employment Record*

Ms. Bauer consistently demonstrated a strong work ethic, as evidenced by her unwavering commitment to maintaining a steady employment record. She frequently managed two jobs concurrently, skillfully balancing her educational pursuits with her work responsibilities. Her dedication and perseverance were evident in her past endeavors, evidencing her diligent approach. These qualities have propelled her towards past achievements and will continue to shape her future success.

Beginning in high school, Ms. Bauer commenced her employment at Kmart, a commitment she maintained even after her graduation, eventually reaching the position of manager. Along the way, she obtained a Commercial Driver's License, which she utilized during her tenure as a driver and merchandiser at Pepsi in Pittsburgh, Pennsylvania. Unfortunately, due to an injury, she had to resign from her position at Pepsi. Following this, she transitioned to working as a school bus driver. Simultaneously, Ms. Bauer pursued her academic goals and achieved remarkable success. While

attending Butler County Community College, she became the co-owner of Paulino's Pizza and graduated summa cum laude from the Hospitality Management – Dietary program.

Around 2006, Ms. Bauer moved to Kane, Pennsylvania, where she and her husband opened Bob's Trading Post. Their restaurant filled a significant void in the area, serving as one of the few establishments that provided not only food but also a community gathering place. It played a crucial role in contributing to community activities and events, going beyond being just a place to eat. Bob's Trading Post became a destination where locals could enjoy a cup of coffee, catch up with fellow community members, and maintain connections.

In addition to its role as a community gathering place, Bob's Trading Post also served as a valuable resource for outdoor enthusiasts seeking advice and when in need. Situated near the National Forest, it became one of the limited options for individuals traveling to partake in activities such as hunting, fishing, camping, and snowmobiling. The restaurant not only provided supplies but also offered information and guidance on these outdoor pursuits. And, in many instances, served as a location to report an accident, emergency, or breakdown.

Additionally, it is worth noting a personal anecdote when the undersigned counsel visited the restaurant several years ago before being acquainted with Ms. Bauer. During that visit, a fellow patron recommended a secluded bass fishing spot known as Buzzard Swamp, which ultimately provided an exceptional fishing experience. This particular incident further emphasizes the wealth of expertise and local knowledge that both the staff and patrons of Bob's Trading Post possess.

Following Ms. Bauer's detention resulting from the revocation of her pretrial release due to non-compliance with conditions, her sister made the arduous decision to relocate from several hours away and assume responsibility for running the restaurant while attempting to manage the financial aspects. Although her sister possessed a background in the food industry, she lacked

experience in bookkeeping, bulk ordering, and was ill-prepared for the physically demanding hours. This sudden change placed significant strain on her, as she had to leave her own family behind, particularly considering her daughter's car accident and other family needs. The physical toll, coupled with the emotional strain of being away from home, proved challenging to maintain.

Upon Ms. Bauer's release from jail, she resumed her duties, despite facing obstacles due to her own health issues. It is evident that Ms. Bauer's motivations for persevering in running the restaurant lie beyond financial gain, as reflected in the financial reporting. In the event of her incarceration, there is no one with the proper certification, capability, or community relations to sustain Bob's Trading Post. Regrettably, it has already been determined that the closure of the restaurant would be inevitable, representing a significant blow to the community. Not only is it one of the few dining establishments in the rural area, but it also serves as a significant contributor to community activities.

C. **The Need for the Sentence Imposed**

The primary directive in 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. 3553(a)(2) states that such purposes are:

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(b) To afford adequate deterrence to criminal conduct;
(c) To protect the public from further crimes of the defendant; and
(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Under 18 U.S.C. 3661, *no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence (emphasis added).

*To reflect the seriousness of the offense, to promote respect for the law,*

7

*and to provide just punishment for the offense*

It is indisputable that the events on January 6, 2021, had a profound negative impact on the country and impression from the global community. Although Ms. Bauer had no intention to trespass or to interfere with the electoral certification process when she traveled to Washington, D.C., and walk towards the Capitol Building, her actions resulted in just that. Despite her initial lack of intent, it is a fact that she engaged in trespassing and interference with the proceedings related to the electoral certification.

It is evident that Ms. Bauer's initial decision to walk beyond the barriers was made without sufficient reflection, and it ultimately triggered a series of highly uncharacteristic behaviors. This is particularly notable when considering her long-standing track record of obeying the law and serving her community. Once situated on the steps of the Capitol Building, her conduct escalated further. Upon entering the building, her behavior became disorderly, intensifying tensions and potentially risking further harm. Her actions represented a significant departure from her usual behavior and had a detrimental impact on the overall situation.

After being indicted, Ms. Bauer demonstrated disruptive behavior in the courtroom and subsequently failed to comply with the conditions of her pretrial release. Consequently, her bond was revoked, and she spent over a year in jail. While it can be argued that she may have been influenced and misguided by misinformation, she had to bear the consequences of her actions. During her incarceration, she made the decision to sever ties with those who sought to influence her negatively.

Upon her subsequent release following a motion for reconsideration of detention, Ms. Bauer has exhibited remarkable conduct, demonstrating her unwavering commitment to conforming with all requirements while on pretrial release. This exemplary behavior not only

speaks to her newfound respect for the legal system but also highlights her readiness to comply with any future supervision requirements.

*To Afford Adequate Deterrence to Criminal Conduct*

Ms. Bauer's life has been characterized by a strong sense of service and obedience to the law. While she has always been a spirited individual, it is evident that at this stage of her life, she is in a healing process. The international spotlight showcasing her at her worst has deeply affected her. Moreover, she had to endure the pain of her father's failing health while being unable to provide comfort due to her incarceration. Being separated from her family and community, along with her personal health issues, has further contributed to her struggles.

Given these circumstances, Ms. Bauer is the last person to have any interest in engaging in the behavior that was witnessed on January 6, 2021. Her appearance and demeanor clearly demonstrate her desire to find peace, reconnect with her family and community, and draw strength from her faith.

## Conclusion

Although the case before this Court carries significant gravity, it is important to acknowledge that Ms. Bauer does not pose a threat to society in terms of her actions or beliefs. She genuinely regrets her past actions, has developed a profound respect for the law, and has been effectively deterred from engaging in future criminal conduct. In support of her argument, Ms. Bauer has submitted several character letters (collectively marked as Exhibit A, Exhibit B, and Exhibit C), community involvement (Exhibit D), and dietary recommendations from Ms. Bauer's medical provider (Exhibit E) to validate the information presented here. In conclusion, Ms. Bauer respectfully urges this Honorable Court to consider imposing a term of supervision. Furthermore, she reserves the right to

supplement and/or address any additional or relevant sentencing issues at the appropriate time.

                                      Respectfully submitted,

                                      *s/ Komron Jon Maknoon*
                                      Komron Jon Maknoon, Esquire
                                      PA I.D. NO. 90466

                                      MAKNOON & ASSOCIATES, LLC.
                                      309 Smithfield St., 4th Floor
                                      Pittsburgh, PA 15222
                                      (412) 201-1802
                                      (412) 774-8424 FAX

                                      Attorney for Defendant, Pauline Bauer