UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **PAULINE BAUER**, <br><br> Defendant. | Case No. 1:21-cr-00386-2 (TNM) |

**MEMORANDUM ORDER**

In a January 2021 bench trial, the Court convicted Pauline Bauer on several charges stemming from her participation in the January 6, 2020, riot at the U.S. Capitol. The Court then sentenced Bauer to 27 months' incarceration and 24 months' supervised release. Bauer now moves for a downward departure under 18 U.S.C. § 3582(c)(2). She contends that she is eligible for the new Adjustment for Certain Zero-Point Offenders, U.S.S.G. § 4C1.1. If eligible, Bauer would shave two levels from her total offense level, giving her an earlier potential release date. But the Court concludes that Bauer is ineligible for the § 4C1.1 adjustment because she used violence and made credible threats of violence in connection with her offense. And even if Bauer did qualify for the adjustment, a sentencing reduction is unwarranted under 18 U.S.C. § 3553(a).

**I.**

The Court briefly recounts the facts of the case based on its findings at the bench trial. On January 6, 2020, Bauer traveled to Washington, D.C., to hear Pennsylvania State Senator Doug Mastriano speak at a rally. Tr. of Bench Trial/Verdict (Verdict Tr.) at 6, ECF No. 191. Bauer and her companions waited for Sen. Mastriano to speak on the east plaza of the Capitol.

*Id*.  While she waited, she heard from others in the crowd that Vice President Pence was "going to throw President Trump under the bus." *Id*.  Bauer then saw protesters break through the bike racks marking the restricted area around the Capitol.  *Id*. at 7.  Bauer joined the riotous mob streaming towards the Capitol building.  *Id*.  She passed police barricades and climbed the Capitol steps.  *Id*. at 7.  Despite police officers' attempts to deter her and other rioters, Bauer forced her way through the Columbus doors on the east front of the Capitol.  *Id*.

Bauer then made her way into the Capitol Rotunda.  While there, she yelled repeatedly at police officers, demanding that the officers bring out members of Congress, including Speaker Nancy Pelosi.  *Id*. at 8.  She screamed at the officers, "Bring them out or we're going in," "They need to hang," "Bring that fucking bitch out here," and "We want Nancy Pelosi!  That's who we want.  Get them all out here!"  *Id*.  Based on these incendiary statements, the Court found that Bauer was "willing to go to great lengths, including breaking numerous laws and threatening physical violence, to stop the certification proceeding."  *Id*.

Baur also accosted at least one police officer who was attempting to secure the Rotunda.  Bauer shoved Officer Travis Coley and yelled, "You back up! Don't even try," when he tried to move her and other rioters away from the hallway leading to Speaker Pelosi's suite.  *Id*. at 8–9.  At trial, Officer Coley testified that Bauer went from being "passive aggressive" to "aggressive."  Tr. of Trial vol. 1 (Trial Tr.) at 130, ECF No. 189.  When he told her to back up, she "push[ed] back against [his] baton" using both hands and told him to "back up."  *Id*.

The Court ultimately convicted Bauer on all counts of her indictment.  In May 2023, the Court sentenced Bauer to 27 months' incarceration and 24 months' supervised release and ordered her to pay $2,000 in restitution.  Judgment 3–7, ECF No. 187.

In September 2023, the Sentencing Commission adopted Amendment 821 to the Sentencing Guidelines, which lowered the Guidelines ranges for certain qualifying defendants. Sentencing Guidelines for the U.S. Courts, 88 Fed. Reg. 60534-02 (Sept. 1, 2023). The Commission determined that Amendment 821 would apply retroactively, effective February 1, 2024. *Id*. Bauer believes that Amendment 821 applies to her case. So she filed this motion seeking a downward departure based on its retroactive application. Def.'s Mot. for Downward Departure (Mot.) at 1–2, ECF No. 192.

## II.

Under 18 U.S.C. § 3582(c)(2), a defendant may move for a reduction in her term of imprisonment if she was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." The Court evaluates such a motion in two steps. *United States v. Wyche*, 741 F.3d 1284, 1292 (D.C. Cir. 2014). First, the Court determines whether the defendant is eligible for a reduced sentence and, if so, calculates the amended Guidelines range. *Dillon v. United States*, 560 U.S. 817, 826–27 (2010). Second, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id*. at 827.

### A.

First, consider whether Bauer is eligible for a reduced sentence under the amended Guidelines. Section 4C1.1 of the Sentencing Guidelines provides for a two-level reduction of the total offense level if "the defendant did not receive any criminal history points" and meets several other eligibility criteria. U.S.S.G. § 4C1.1(a)(1). Since Bauer did not receive any

3

criminal history points, the only remaining criterion here is that "the defendant did not use violence or credible threats of violence in connection with the offense." *Id*. § 4C1.1(a)(3).

Bauer argues that she "did not use violence or credible threats of violence" when she entered restricted Capitol grounds and obstructed the certification of the Electoral College vote. The Court disagrees. While rioting in the Capitol Rotunda, Bauer both used violence when she shoved Officer Coley and made credible threats of violence when she incited the mob to "hang" Speaker Pelosi. So Bauer is ineligible for the two-level reduction under § 4C1.1.

For starters, Bauer "use[d] violence" when she shoved Officer Coley. *Id*. § 4C1.1(a)(3). In interpreting the Sentencing Guidelines, the Court applies the ordinary tools of statutory interpretation and looks to the plain meaning of its terms. *United States v. Seefried*, 639 F. Supp. 3d 8, 10 (D.D.C. 2022). To discern plain meaning, the Court looks to the Guidelines' own definitions, or to dictionaries when no definitions are provided. *See Kaufman v. Nielsen*, 896 F.3d 475, 485–87 (D.C. Cir. 2018) (relying on dictionaries to determine plain meaning); *United States v. Pineda-Duarte*, 933 F.3d 519, 523 (6th Cir. 2019) ("In considering that plain language, we might ordinarily start by looking to the definition of 'violence' assigned by the Sentencing Commission."). The Court also looks to precedent to see how other courts have interpreted similar words or phrases. *See Seefried*, 639 F. Supp. 3d at 10.

The Sentencing Guidelines do not define what it means to "use violence." So the Court turns to dictionaries to fill the gap. Contemporary dictionaries define "violence" as "[t]he use of physical force," typically "accompanied by fury, vehemence, or outrage" and "unlawfully exercised with the intent to harm." *Violence*, Black's Law Dictionary (11th ed. 2019); *see Pineda-Duarte*, 933 F.3d at 523 (citing Black's Law Dictionary for definition of "violence" in

interpreting U.S.S.G. § 2D1.1).  Or, similarly, "violence" is the "exertion of any physical force so as to injure or abuse." *Violence*, Webster's Third New International Dictionary (1993).[1]

Baur's conduct falls within the plain meaning of "violence."  Though the use of violence or physical force was not an element of any crime of conviction, the Court noted in its verdict announcement that Bauer "shoved" a police officer.  Verdict Tr. at 8.  It also credited Officer Coley who testified that Bauer "be[came] aggressive" and pushed against his baton using both hands while telling him to "back up."  Trial Tr. at 130.

In her Motion, Bauer characterizes her use of force against Officer Coley as "slight." Mot. at 4.  She also argues that it was a "pure reaction to being pushed by Officer [Coley]" and that she lacked the requisite "intent to harm." *Id*.  The Court disagrees.  Bauer "aggressive[ly]" pushed Officer Coley's baton, while also yelling at him "[f]uck you, you fucking bitch."  Trial Tr. at 130.  Bauer's vehement tone and abusive language emphasized the seriousness of her physical actions against him.  Indeed, Bauer's companion, William Blauser, had to restrain Bauer from further interacting with Officer Coley.  Sentencing Tr. at 52.  This undermines any claim that her use of force against Officer Coley was an "immediate reaction" rather than an

---

[1] The Supreme Court has provided extensive guidance on what constitutes "the use, attempted use, or threatened use of physical force against the person or property of another" when determining whether a predicate offense is a "crime of violence" under the Armed Career Criminal Act (ACCA). *See, e.g., United States v. Taylor*, 596 U.S. 845, 854 (2022) (quoting 18 U.S.C. § 924(c)(3)(A)).  Neither party argues that the Court's doctrine defining "crime of violence" under ACCA applies to § 4C1.1(a)(3).  Nor has any court interpreted § 2D1.1(b)(2)'s enhancement for defendants who "used violence, made a credible threat to use violence, or directed the use of violence" as analogous to "crime[s] of violence" under ACCA. *See, e.g.*, *Pineda-Duarte*, 933 F.3d at 523.  If the Sentencing Commission had intended for § 4C1.1 to adopt ACCA's requirements, it would have done so explicitly, as it has for other provisions in the Guidelines.  *See* U.S.S.G. § 7B1.1(a)(1) (establishing that "crime[s] of violence" constitute a Grade A violation of supervised release conditions); *id*. § 4B1.2 (incorporating the definition of "crime of violence" from 18 U.S.C. § 924).  The Court thus will not turn to ACCA case law in determining the meaning of "use violence."

aggressive confrontation. *See* Mot. at 4. In short, Bauer's use of force was not "slight." Rather, she used force accompanied by fury and vehemence with the intent to harm or abuse Officer Coley.

But Bauer is ineligible for a reduction for another reason. Even setting aside whether she used violence against Officer Coley, the Court concludes that Bauer made credible threats of violence against members of Congress, including Speaker Pelosi. Once again, the Guidelines do not define "credible threats of violence." Nor has the Circuit attempted a definition. *See United States v. Johnson*, 64 F.4th 1348, 1352 (D.C. Cir. 2023) ("Our court has yet to determine what constitutes a 'threat to use violence' for purposes of [U.S.S.G. § 2D1.1(b)(2)]."). So the Court turns to dictionaries to discern the plain meaning of the Guidelines' text. *See Seefried*, 639 F. Supp. 3d at 10. Contemporary dictionaries define "credible" as "[c]apable of being credited or believed." *Credible*, Webster's Third New International Dictionary (1993). Meanwhile, "threat" is defined as "an expression of an intention to inflict evil, injury, or damage on another," *Threat*, Webster's Third New International Dictionary (1993), or as "a declaration, express or implied, of an intent to inflict loss or pain on another," *Threat*, Black's Law Dictionary (11th ed. 2019). Combining these definitions, a "credible threat of violence" is a believable expression of an intention to use physical force to inflict harm.

The Court concludes that Bauer made credible threats of violence when she screamed, "We want Nancy Pelosi, that's who we want" and "Bring them out! You bring them out or we're coming in!" Verdict Tr. at 8. Bauer also explicitly threatened violence when she yelled, "Bring Nancy Pelosi out here now! We want to hang that fucking bitch! Bring her out!" Final Presentence Investigation Report (PSR) ¶ 30, ECF No. 181.

Bauer does not contest that these statements constituted a threat of violence, but she argues that they were not *credible* threats because she "did not have the ability at the time of the offense to carry out her threat due to the numerous officers guarding the corridor." Mot. at 4. But courts look to "contextual evidence" to determine whether a threat was credible. *Johnson*, 64 F.4th at 1352. And here, Bauer was not facing a wall of police officers on her own. She was joined by many rioters who had crossed police lines into a restricted area and had even forced officers to temporarily retreat. PSR ¶ 9. Her loud and vehement calls for violence encouraged other rioters to pick up the call and added to the danger of a dynamic situation.

Given this context, the outnumbered police officers in the Rotunda—and any legislators within earshot—would have reasonably believed that Bauer's violent threats meant that she would harm them, possibly with the aid of fellow rioters. As a participant in a violent mob, Bauer cannot claim that her threats to "hang" Nancy Pelosi were like a clanging cymbal. This is especially so given that Bauer and other rioters were only a few steps from Speaker Pelosi's office—a fact the Court noted in imposing its sentence. Sentencing Tr. at 51. And no matter if Bauer could have—or would have—hanged Speaker Pelosi, the circumstances make it clear that her threats were not "innocent hyperbole." *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 83 (2d Cir. 2018) (finding no clear error in application of two-level enhancement when defendant claimed violent threats were "mere puffery"). Rather, the Court reiterates that her shocking and violent threats went beyond "idle talk." Sentencing Tr. at 51; *cf. Johnson*, 64 F.4th at 1352 ("[A] threat is a threat, even if the speaker never intends to carry it out."). A mob is dangerous in part because it can quickly escalate into violent actions that no member of the mob would have or could have attempted alone. Bauer's vicious shouts poured gasoline into this combustible

environment. By egging on the riotous mob, Bauer made credible threats of violence against police officers and members of Congress.

Last, beyond her specific threats to harm Speaker Pelosi and others, the Government argues that Bauer is ineligible for an adjustment under § 4C1.1 based on her mere participation in the Capitol riot. The Court is unpersuaded. The text of § 4C1.1 specifies that the "*defendant* did not use violence or credible threats of violence." The Court must therefore evaluate a defendant's conduct in determining eligibility for a § 4C1.1 adjustment. It cannot simply impute the "use of violence" to a defendant based on the actions of others.

True, other judges in this district have noted that each individual rioter contributed to the disruption of congressional proceedings on January 6. *See United States v. Rivera*, 607 F. Supp. 3d 1, 9 (D.D.C. 2022). But it does not follow that individuals who trespassed and impeded the certification of the Electoral College vote are also responsible for the conduct of the most violent and egregious rioters. As the Circuit explained regarding pretrial detention, January 6 rioters "who actually assaulted police officers and broke through windows, doors, and barricades . . . are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

So too here. Just as a district court must examine with particularity whether a defendant presents an "articulable threat to an individual or the community" for the purpose of pretrial detention, it must also evaluate with particularity whether the defendant used violence or made credible threats of violence. *Cf. United States v. Hernandez-Barajas*, 71 F.4th 1104, 1106 (8th Cir. 2023) (explaining that under U.S.S.G. § 2D1.1(b)(2), "[t]he defendant is the one who must make the credible threat, even if it involves the potential use of violence by someone else"). In

8

contrast, by the Government's logic, the Court should apply a "physical contact" specific offense characteristic to any defendant convicted of obstructing or impeding officers in their official duties, even if the defendant never made physical contact with a police officer. But, unsurprisingly, courts in this district have not done so. *See, e.g.*, *United States v. Sheppard*, No. 21-cr-203, 2024 WL 127016, at *4 (D.D.C. Jan. 11, 2024). The Court thus declines to adopt the Government's broad guilt-by-association interpretation of § 4C1.1.

The defendant bears the burden in seeking a sentencing reduction under § 4C1.1. *See United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009). Some January 6 rioters may qualify for a § 4C1.1 reduction if they demonstrate their participation was non-violent. But Bauer has not met that burden. Because Bauer both used violence and made credible threats of violence in connection with the offense, she is not eligible for a two-point reduction under U.S.S.G. § 4C1.1. The Court's original guideline determination of 21 to 27 months remains appropriate.

**B.**

Even assuming Bauer was eligible for a reduced sentence under § 4C1.1, the § 3553(a) factors weigh against any reduction.

As the Court noted at sentencing, there are several aggravating factors here. First, in the early stages of this case, Bauer refused to comply with her pretrial release conditions. Sentencing Tr. at 53. And when the Court ordered that she be detained, Bauer had to be "literally dragged screaming out of the courtroom." *Id*.

More, at trial Bauer repeatedly perjured herself on the stand. At sentencing, the Court found that Bauer "offered demonstrably false explanations for her criminal conduct on January 6." Sentencing Tr. at 9. For example, Baur claimed to be ignorant of the Electoral College certification process. But several Facebook posts and text messages presented at trial showed

she was "aware that Speaker Pelosi had a role in the certification process" and that she had a "general understanding that certification was happening at the Capitol on January 6." *Id.* at 9. Bauer also testified that she believed certification was over by the time she reached the Rotunda. But on January 6, she sent a text saying she knew the process had not been completed. *Id.* Finally, Bauer claimed that she demanded members of Congress come out to the Rotunda for "crimes against humanity" relating to COVID. *Id*. The Court, however, found this incredible given the clear evidence that Bauer entered the Rotunda to disrupt the Electoral College certification process. *Id.* In sum, the Court concluded that Bauer showed a "disrespect for the governing institutions of this country that [it] could not ignore." *Id*. at 53.

The Court's authority to reduce a term of imprisonment under 18 U.S.C. § 3582(c) is unambiguously discretionary. *See Dillon*, 560 U.S. at 827 ("[Section] 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case."). So even if Bauer qualified for a two-level reduction under § 4C1.1, the Court still would vary upward based on the aggravating factors discussed above. The Court found previously that a sentence of 27 months' imprisonment and 24 months' supervised release is necessary to achieve the purposes outlined in 18 U.S.C. § 3553(a). Nothing Bauer argues here changes that conclusion.

## III.

For these reasons, it is hereby **ORDERED** that Defendant's [192] Motion for Downward Variance is **DENIED**.

**SO ORDERED.**

Dated: January 29, 2024                                         TREVOR N. McFADDEN, U.S.D.J.